MOLINE, MILBURN & STODDARD COMPANY v. H. J.
CURTIS ET AL.

FILED DECEMBER 22, 1893.    No. 4909.

1. **A motion to dissolve an attachment**, to be available, must
   be made before final judgment in the action.  Where such a
   motion has been made and heard before the trial of the cause,
   and taken under advisement, the court may, after judgment for
   the plaintiff, rule upon the motion.

2. **An affidavit for attachment** is not void, although purporting
   in its opening clause to be that of a corporation plaintiff, where
   it sufficiently appears from the whole affidavit that it is that of
   the agent of the corporation, and that such agent in fact made
   oath thereto and signed it.

3. **An affidavit for an attachment** may be amended by leave of
   court, even after a motion to quash the writ is filed, because of
   that particular defect. (*Struthers v. McDowell*, 5 Neb., 491.)*

4. **Bill of Exceptions.** A COUNTY JUDGE has no power or au-
   thority to sign a bill of exceptions preserving the evidence used
   in the hearing of a motion to discharge an attachment. (*Baer v.
   Otto*, 34 O. St., 11.)  MAXWELL, C. J., dissenting.

ERROR from the district court of Johnson county.  Tried
below before BROADY, J.

*Switzler & McIntosh* and *L. C. Chapman*, for plaintiff
in error.

*S. P. Davidson* and *Corydon Rood, contra.*

NORVAL, J.

This was an action brought in the county court by
plaintiff in error, aided by attachment, against the defend-
ants in error.  Prior to the trial a motion was made and

---

* If the plaintiff, at the date of issuing an attachment, does not own
the claim for which he seized the defendant's property, he cannot
afterwards, by purchasing such claim, assert it by amendment against
the property seized. (*Farwell v. Wright*, 38 Neb., 445.)

submitted to the county court to vacate the attachment, which was taken under advisement. Some time after judgment was rendered in favor of plaintiff in the main case, the defendants' motion to discharge the attachment was denied by the county court; and to reverse said order defendants prosecuted a petition in error to the district court, where the decision of the county court sustaining the attachment was reversed, and the attachment dissolved. Plaintiff thereupon prosecuted a petition in error to this court.

Three questions are presented for our determination, namely:

1. Where a motion to dissolve an attachment has been submitted to the court and taken under advisement before trial and judgment in the action, can the court, after judgment has been rendered for the plaintiff, pass upon such motion?

2. Did the county court err in permitting plaintiff to amend the original affidavit for attachment?

3. Has a county judge authority to sign and allow a bill of exceptions embodying affidavits used on the hearing of a motion to discharge an attachment?

Plaintiff insists that the order of the county court sustaining the attachment was without authority of law and void, for the reason the same was not made until after final judgment in the action. The statute bearing upon the question, section 235 of the Code, declares that "the defendant may, at any time before judgment, upon reasonable notice to the plaintiff, move to discharge an attachment, as to the whole or a part of the property attached." The most that can be claimed for this provision is that a motion to dissolve an attachment, to be available, must be made before final judgment has been rendered for the plaintiff in the action. Of course, a final judgment in favor of a defendant on the merits terminates the attachment proceedings, and vacates the attachment; but a final judgment in

favor of the plaintiff does not have the effect to sustain the attachment in all cases.  The only reasonable construction of the section quoted is that the authority of the court to dissolve an attachment is limited to cases where a motion to discharge is filed before judgment.  In other words, where such a motion is seasonably made and submitted to the court for its decision thereon, but through inadvertence or otherwise no ruling has been made before final judgment on the merits, the court has jurisdiction to rule upon the motion after such judgment.  The question now before us was not raised or decided in *Rudolf v. McDonald*, 6 Neb., 163.  In that case the motion to dissolve the attachment was not made until after final judgment, and it was held to be too late to be of any avail to the party making it.  In the case before us, not only was the motion made before judgment, but a hearing thereon was had, and the same taken under advisement.  The failure of the court to rule thereon sooner is not chargeable to the defendants, but was the fault of the court alone.  Under the circumstances it was the duty of the county judge to pass upon the motion after judgment had been entered for plaintiff in the action.

Was the original affidavit on which the attachment was issued defective, and did the county judge err in permitting plaintiff to amend the same?  We answer in the negative. The original affidavit for attachment is as follows:

"STATE OF NEBRASKA, ⎰ ss.
    JOHNSON COUNTY.  ⎱

" The said plaintiff, the Moline, Milburn & Stoddard Company, makes oath that the claim in this action is for a recovery of a judgment for money in the sum of nine hundred and seventy-five dollars and $\frac{36}{100}$, and the said S. W. Croy, agent of the Milburn, Moline & Stoddard Company, also makes oath that said claim is just, and that the Moline, Milburn & Stoddard Company ought, as affiant believes, to recover thereon nine hundred and seventy-five dollars and $\frac{36}{100}$.  He also makes oath that the said Har-

rison J. Curtis, Henry B. Curtis, and Mary E. Curtis, parties composing the firm of H. J. Curtis & Co., defendants, are about to convert their property, or a part thereof, into money, for the purpose of placing it beyond the reach of their creditors; that said Harrison J. Curtis, Henry B. Curtis, and Mary E. Curtis has property and rights in action which they conceal; that the said Harrison J. Curtis, Henry B. Curtis, and Mary E. Curtis have assigned, removed, and disposed of, and they are about to dispose of, their property, or a part thereof, with intent to defraud their creditors.                    S. W. CROY,

"*Agent for Moline, Milburn & Stoddard Company.*

"Subscribed in my presence and sworn to before me this 30th day of October, A. D. 1889.

"JOHN WILSON,
" *County Judge.*"

Although the affidavit in the opening clause, relating to the nature of plaintiff's claim, standing alone, purports to be that of the corporation, but when read in connection with what follows, and construing the paper as a whole, as we must, it sufficiently appears that S. W. Croy makes oath to each averment contained in the affidavit, and that he is plaintiff's agent. A similar affidavit was sustained by this court in *Whipple v. Hill*, 36 Neb., 720. (See also *Rudolf v. McDonald*, 6 Neb., 163; *Tessier v. Englehart*, 18 Neb., 167, and *Jansen v. Mundt*, 20 Neb., 320.)

The county court permitted plaintiff to amend the affidavit by inserting " S. W. Croy, Secretary and Treasurer of" after the word "plaintiff" in the first line. The alleged defect was thereby cured. It is not error to permit an affidavit for attachment to be amended, even after a motion to dissolve has been filed. (*Struthers v. McDowell*, 5 Neb., 491; *Rudolf v. McDonald, supra.*)

It appears that the motion to vacate the attachment was heard upon affidavits filed by the plaintiff, and on counter-affidavits submitted by the defendants. The county judge

signed a bill of exceptions embodying all these affidavits, and in the district court plaintiff moved to quash the bill, on the ground that there is no authority of law for signing a bill of exceptions in such cases. The motion was over-ruled, and this ruling is assigned as error.

Before entering upon the consideration of this branch of the case, it should be stated that the cause was originally submitted to the supreme court commissioners for examination and report. Subsequently, an opinion prepared by Commissioner IRVINE, covering every proposition presented by the record, which was concurred in by both the other commissioners, was submitted to the court, and the members thereof being divided in opinion upon one proposition, viz., the jurisdiction of the county judge to sign the bill of exceptions, I will give my views upon the subject.

Commissioner IRVINE, in discussing the question, says : "It is not doubted that an order sustaining an attachment is, at least after judgment in the action, a final order, which the defeated party may have reviewed on error. (*Walker v. Morse*, 33 Neb., 650.) The question is not whether such an order may be reviewed, but whether the evidence used on the hearing of the motion in the county court may be preserved by a bill of exceptions for use in the error proceedings.

"By chapter 20, Compiled Statutes, section 2, it is provided that the Code of Civil Procedure, relative to justices of the peace, shall, where no specific provision is made by that subdivision, apply to the proceedings in all civil actions prosecuted before such county court. This is the same section which confers upon the county court jurisdiction concurrent with the district court in all civil cases not exceeding one thousand dollars, except upon certain specific subjects. By section 11 of the same chapter it is provided that where the amount exceeds the jurisdiction of the justice of the peace, motions and demurrers shall be allowed, and the rules of practice concerning pleadings and.

processes in the district court shall be applicable, as far as
may be, to pleadings in the county court.    This section is
a specific provision changing the general rule established
by section 2 only in regard to pleadings and processes.
By section 16, orders for arrest and for attachment may
issue from the county court, and where the demand exceeds
the jurisdiction of a justice, the proceedings upon such
orders shall be the same, as near as may be, as in the district
court.    This section makes the proceedings upon orders of
attachment analogous to those of the district court, but has
no reference to proceedings in the district court to review
such orders.    By section 26 it is provided that in civil ac-
tions either party may appeal or prosecute a petition in
error in the same manner as provided by law in cases tried
and determined by justices of the peace.    Section 31 pro-
vides that the county judge shall keep a docket in which
all of his proceedings in civil actions shall be entered, in
like manner, as near as may be, as before justices of the
peace, and that the provisions of the Code relating to
justices' dockets shall, as near as may be, apply to the docket
of the county judge.    This section should be construed in
connection with section 1086 of the Code, which provides
specifically what shall be entered upon the dockets of jus-
tices.    Among other things so required to be entered is the
affidavit upon which an order of attachment is made, and
also exceptions to the rulings of the justice on questions
of law; but this latter provision, taken in connection with
its context, shows that it applies to cases tried by a jury.

"The result of the statutes so far is that the procedure in
the county court in all civil actions must conform with the
procedure before justices of the peace, except in certain
particulars specially provided by the statutes, and not em-
bracing bills of exceptions; and that the record of a pro-
ceeding in the county court must contain the affidavit upon
which an attachment is founded, but not the affidavits or
proof used on the hearing of a motion to dissolve such at-

tachment.   Such affidavits cannot, therefore, be considered in error proceedings unless embodied in a bill of exceptions, and they cannot be embodied in a bill of exceptions unless the law authorizes such a bill.

"In *Taylor v. Tilden*, 3 Neb., 339, Judge GANTT reviews the statutes upon the subject, and holds that the provision allowing justices of the peace to sign bills of exceptions embodying questions of law arising during a trial by jury is exclusive, and that there is no authority for a bill of exceptions in other cases.   He says that 'the petition in error brings up to the appellate court a judgment or decision of the inferior court together with a transcript of the record, and bills of exceptions constitute no part of such record unless made so by some statutory provision.'   This case was reaffirmed in an opinion by Judge LAKE in *Kellogg v. Huntington*, 4 Neb., 96, and the same rule of construction was followed in *Nickerson v. Needles*, 32 Neb., 230, and in *Chicago, B. & Q. R. Co. v. Goracke*, 32 Neb., 90.   In the latter case it was held that the authority for a bill of exceptions was so restricted that such bill could be made to embody only the rulings of the justice upon questions of law arising during a trial by jury, and did not permit the preservation of all the evidence in order to permit a review upon the ground 'that the verdict was not sustained by the evidence.

"The first authority for a bill of exceptions is found in the statute of 13 Edward I, chapter 31.   The purpose of that statute, as well as all other statutes upon the subject, was to provide a method for bringing into the record what otherwise would not appear there.   These statutes have received a uniformly strict construction, as may be seen from an examination of the cases cited in 1 Troubat & Haly, Practice, 570 *et seq.*   They have never been extended beyond their letter.   It cannot be argued that the authority to have the case reviewed on error implies an authority to have a bill of exceptions settled, because cases were re--

viewed on error long before such a thing as a bill of exceptions was known; and cases are now reviewed in this court, and in others, where error appears upon the record, without the aid of a bill of exceptions.

"It is also urged that the right to a bill of exceptions should be implied from sections 586 and 587 of the Code. Section 586 requires the plaintiff in error to file with his petition a transcript of the proceedings containing the final judgment or order sought to be reversed. Section 587 provides that county judges, justices of the peace, and others, upon request and upon being paid the lawful fees therefor, shall furnish an authenticated transcript of their proceedings, including the judgment or final order. The term "transcript" implies that the document referred to shall be a copy of some original document, and the language, taken in connection with chapter 20, section 26, above referred to, and other sections relating to the filing of transcripts in the district court, plainly refers to a transcript of the entries required to be made upon the docket, and does not require a transcript of all papers filed or of all evidence offered in the case. We think, therefore, that there is no authority of law for the county judge to sign a bill of exceptions embodying affidavits used as evidence on motions to dissolve an attachment. We regard the Nebraska cases cited as decisive of this question. Even were we convinced that the earlier cases were wrong, we would hesitate to overrule so long a line of authority, especially upon a question of practice where it is perhaps more important that the law should be stable and certain than that it should be right. It is probable that the legislature intended to make findings of fact in the court of first instance decisive upon such matters, and that that policy accounts for the omission. At any rate it is the legislature, and not the courts, which should supply the omission. In the long line of decisions directly or indirectly affecting this question there are but two cases which cast any doubt upon the correctness of the conclu-

sions we have reached.   One is *Walker v. Morse,* already
cited, where this court held that such a bill of exceptions
should not have been quashed in the district court because
the motion to quash the same was not sufficiently specific.
It is plain from an inspection of that case that the motion
was urged upon some technical ground not expressed in the
motion, and that the attention of the court was not chal-
lenged to the question now before us.   The other is *Osborne
v. Canfield,* 33 Neb., 330, where the distinction between
the right to review a judgment on error and the right to a
bill of exceptions was evidently overlooked.   We cannot
regard those cases as overruling all the others upon the
subject.   The district court erred in overruling the motion
to quash."

I fully concur in the conclusion reached by Commissioner
IRVINE.   His argument in support of the proposition that
a county judge is without authority to settle a bill of excep-
tions embodying the evidence adduced on the hearing of a
motion to vacate an attachment is, to my mind, unanswer-
able.   In what I shall say upon the subject I shall refrain
from going over the ground covered by that opinion.

The chief justice says, in substance, that the decisions of
this court in *Taylor v. Tilden,* 3 Neb., 339, and *Kellogg v.
Huntington,* 4 Neb., 96, holding that a bill of exceptions
cannot be taken from the ruling of a justice, except in cases
tried to a jury, have been adhered to, and are the law of
this state, but these "cases rest, to some extent, upon the
ground that an adequate remedy is given by appeal."   An
examination of the opinions in the cases mentioned fails to
disclose that either was predicated upon the fact that there
existed a remedy by appeal.   On the contrary they are placed
squarely upon the ground that there is no statute in this
state authorizing a county judge or justice of the peace to
allow a bill of exceptions in a case, unless such cause is
tried by a jury.   The right to a bill of exceptions is purely
statutory, and where it is not authorized by law, a party is

not entitled to one. GANTT, J., in the first case says: "The statute does not give the right of a bill of exceptions to the ruling of the probate judge, or justice of the peace, upon questions of law arising during the trial before them, in cases not tried before a jury, and hence, such bill of exceptions cannot be considered in an appellate court, because it is an act without authority of law, and a nullity." That action, like this, was commenced in the county court, and the decision ought to be decisive of the question under consideration. The same doctrine has been held and applied in *Kellogg v. Huntington, supra; Rudolf v. Winters,* 7 Neb., 125; *Burlington & M. R. Co. v. Dick,* 7 Neb., 244, besides the two cases in 32 Neb., cited by Commissioner IRVINE.

The supreme court of Ohio, in *Baer v. Otto,* 34 O. St., 11, has placed the same construction upon the statute of that state. In that case the question arose whether a justice of the peace has any power to sign a bill of exceptions containing the evidence taken before him on the hearing of a motion to discharge an attachment, and the court in the opinion say:

"In the case now before us, it might be said that there is no such preponderance of evidence against the order refusing to discharge the attachment as would justify its reversal.

"But, in order to settle the practice in such cases, we now decide that there is no provision made by legislation, as it now stands, for preserving the evidence offered on such motion, or for reviewing the decision of the justice, upon the ground that such order, either in granting or refusing the motion, is contrary to the evidence.

"The statute prescribing the contents of a justice's docket (section 203 of the Justices' Code; S. & C., 804, 805) does not require any evidence to be recorded. And the only statute which authorizes a bill of exceptions to be signed by a justice is the act of February 11, 1869 (66 Ohio L., 7), and the sole object of the bill of exceptions provided

38

for in this act, is to authorize a review of the questions of law arising during a trial of the cause before the justice."

After the decision in *Baer v. Otto, supra,* the legislature of Ohio passed a law authorizing a bill of exceptions where an order discharging or refusing to discharge an order of attachment is made. (Revised Statutes of Ohio, sec. 6524.)

There is no room for doubt that it is the settled law of this state that a justice of the peace is not authorized to sign a bill of exceptions preserving the testimony on which he acted in sustaining or overruling a motion to dissolve an attachment; and the above opinion of the commissioner satisfies the writer that the rule is the same in such cases in the county courts. Such has been the scope of the decisions in cases originating in county courts, and that too where the amount exceeded the jurisdiction of a justice of the peace. (See *Rudolf v. Winters, supra,* and *Nickerson v. Needles, supra.*)

Had this suit originated in the district court, and the motion to discharge the attachment been there made and the same had been either sustained or denied, the defeated party, it is true, would have been entitled to have the evidence taken on the hearing incorporated in a bill of exceptions. The power of the district court to sign bills of exceptions is not limited to cases tried to a jury; but the statute confers ample authority upon that court to sign a true bill in all cases, whether tried to a court or to a jury; and it is no argument to say that because the attaching creditor, where the attachment is discharged by the district court, may have the evidence preserved by a bill of exceptions, another party in a similar case, upon a like ruling made by the county court, is likewise entitled to a bill of exceptions. The authority of the two courts to settle and allow bills of exceptions rests upon entirely dissimilar statutory provisions.

Attention has been called to section 236e of the Code. We cannot yield assent to the proposition that said section,

either in express terms or impliedly, confers the power for settling a bill of exceptions in any case, or the right to review the order of the court discharging an attachment. That the section was not passed by the legislature for any such purpose is clearly manifest from a reading of the language of the provisions, as well as the purpose of the act expressed in the title. The act is entitled "An act to provide for the retention of attached property pending a review on error of an order discharging the attachment." The object named in the title is carried into the body of the statute. As was said by the present chief justice in his opinion in *Adams County Bank v. Morgan*, 26 Neb., 149, in considering section 236*e* of the Code, "this section applies alone to the retention of the lien of the attachment; that is, if the attaching creditor desires to retain his attachment lien upon the property attached until the ruling on the motion to discharge can be reviewed in the appellate court, he must, within such time as the court shall fix, not exceeding twenty days, give an undertaking to the adverse party, with approved sureties, in double the appraised value of the property, conditioned," etc. It cannot be doubted that the sole purpose the legislature had in adopting the section under consideration was to provide for preserving the lien of the attachment pending the review of the order dissolving the attachment in the appellate court. The act confers no authority, nor does it attempt so to do, to prosecute error from the ruling of the court in sustaining or vacating an order of attachment. Such power already existed at the time the section became a law. The discharging of an attachment is a final order, and is reviewable under sections 581 and 582 of the Code. (*Turpin v. Coates*, 12 Neb., 321.) Even though it should be held that section 236*e* confers the right to review the ruling on a motion discharging an attachment and to the evidence upon which the decision is based, the section has no application to the case at bar, since the county court did not dissolve the attachment, but sus-

tained the writ. By no process of reasoning can it be held that the section authorizes a county judge to sign a bill of exceptions where the attachment is upheld. The section applies alone to cases in which the attachment is discharged.

Mention has been made of the writ of *certiorari,* and it is claimed that under such a writ a party at common law was entitled to bring up for review both the evidence upon which the inferior tribunal acted and the question of jurisdiction. We concede that section 599 of the Code confers upon courts the same power to compel the proceedings of an inferior tribunal to be brought up for review as existed at common law, and that by section 901 of the Code the common law remedies are continued in force in this state, where the Code has failed to provide a remedy. But we are unwilling to admit that as a general rule a court upon a common law writ of *certiorari* will examine the evidence for the purpose of determining whether it sustains the judgment sought to be reviewed. It is my understanding that the office of a common law *certiorari* is only to bring up for review the question of jurisdiction or power, and errors on the face of the record, and that the reviewing court will not inquire whether the decision of the inferior tribunal was right upon the merits. (*Corrie v. Corrie,* 42 Mich., 509; *Hyslop v. Finch,* 99 Ill., 171; *Rawson v. McElvaine,* 49 Mich., 194; *Central P. R. Co. v. Placer County,* 43 Cal., 365; *Ex parte Nightingale,* 11 Pick. [Mass.], 168; *McAllilley v. Horton,* 75 Ala., 491; *Rayner v. State,* 52 Md., 368; *Lapan v. Commissioners of Cumberland County,* 65 Me., 160; *De Rochebrune v. Southeimer,* 12 Minn., 78; *Conover v. Davis,* N. J. Law, 112; *In re Kensington & Oxford Turnpike Co.,* 97 Pa. St., 260.) There is considerable conflict in the authorities upon the question, but we think the rule just stated is the scope of *certiorari* as applied to judgments of justice courts, and other similar tribunals. (*Frederick v. Clark,* 5 Wis., 191; *Baizer v. Lasch,* 28 Wis., 268; *Smith*

*v. Bahr*, 62 Wis., 244; *Owens v. State*, 27 Wis., 456; *State v. Huck*, 29 Wis., 202; *Paulsen v. Ingersoll*, 62 Wis., 312; *Callon v. Sternberg*, 38 Wis., 539; *Milwaukee Iron Co. v. Schubel*, 29 Wis., 444; *Driscoll v. Smith*, 17 N. W. Rep. [Wis.], 876; *Tiedt v. Carstensen*, 61 Ia., 334; *Healy v. Kneeland*, 48 Wis., 497; *Schall v. Bly*, 43 Mich., 401; *Carver v. Chapell*, 37 N. W. Rep. [Mich.], 879.)

In *State v. Huck, supra*, a justice of the peace, under a writ of *certiorari*, certified up all the evidence, as well as the record, to the circuit court, where the judgment of the justice was reversed as being against the evidence. On error to the supreme court the judgment of the circuit court was reversed, and that of the justice affirmed; the court holding that upon *certiorari* issued to a justice of the peace, only jurisdictional errors and defects disclosed by the record would be examined.

In *Carver v. Chapell, supra*, plaintiff sued out an attachment. The writ was dissolved on motion of the defendant. The supreme court of Michigan held, on review of the case, that on *certiorari* it would not review the facts or pass upon the weight of the testimony upon which the lower court based its ruling.

In *Milwaukee Iron Co. v. Schubel, supra*, Cole, J., in speaking of *certiorari*, says: "In this state the common law writ has almost invariably been brought to review the proceedings and judgments of justices of the peace; and this court has, with much uniformity, declined to consider upon such writ any but jurisdictional questions, or such questions of law as might arise upon the docket entries of the justice. The court has refused to try the merits of the action by a common law writ, or to examine any alleged error of the justice in his rulings on the trial, or to consider any objection which involved an inquiry into the evidence. There was no way provided by which such decisions and rulings became a matter of record; and, besides, an adequate remedy was afforded for a review of these judicial

acts by means of the statutory writ of *certiorari* or by appeal."

It is perfectly plain that *certiorari* will not lie where the statute affords a remedy by error or appeal. The decision of a justice of the peace, or county court, in sustaining or dissolving an attachment can be reviewed by proceedings in error. True, the ruling of said courts on a motion to discharge an attachment cannot be reviewed on the ground that the decision is against the weight of the evidence; but that is not the fault of the court, but of the law, in failing to provide for preserving the evidence by a bill of exceptions. *Osborne v. Canfield*, 33 Neb., 330, is overruled. In the case we are considering, the district court reversed the decision of the county court upon the ground that it was contrary to the evidence. As the bill of exceptions was without authority of law, the district court erred in not quashing the same. It follows that the judgment of the court below should be reversed, and that of the county court affirmed.

REVERSED.

MAXWELL, C. J., dissenting.

This cause was submitted to the commission, and a decision of a majority of that body not conforming to the views of this court upon one point, it is necessary to state the law upon the subject, as I understand it. The action was brought by the plaintiff against the defendants in the county court by attachment. The defendants thereupon filed a motion to dissolve the attachment and supported the same by various affidavits. It was also claimed that the affidavit of one Croy, the agent of the plaintiff, was insufficient and an amendment was permitted. On all these questions the opinion of the majority of the court, in my view, is right. The county court sustained the attachment. The cause was taken on error to the district court and a bill of exceptions, duly signed, containing the affidavits and

evidence submitted on a motion to dissolve the attachment. A motion was made in the district court to strike the bill of exceptions from the files because there was no authority of law for the granting of the same. The motion was overruled, and the attachment was sustained. The ruling of the court is the principal question involved.

Section 236e of the Code provides: "That when an order discharging an order of attachment is made, and any party affected thereby shall except thereto, the court, or judge, shall fix the number of days, not to exceed twenty, in which such party may file his petition in error, during which time the property attached shall be held by the sheriff or other officer, during which period the petition in error shall be filed, and the party filing the same shall give an undertaking to the adverse party, with surety or sureties, to be approved by the court, in double the amount of the appraised value of the property attached, conditioned to pay said adverse party all damages sustained by such party in consequence of the filing of said petition in error in the event that such order of attachment shall be discharged by the court, in which said petition in error shall be filed, as having been unlawfully obtained." This provision of the Code was adopted in 1873, and applies to all cases of attachment where an order is made discharging the same. Now is it possible that in a certain case the attaching creditor may, when the attachment is discharged, have the evidence on which he predicates his right preserved in a bill of exceptions and in a similar case in another court would be denied that privilege? It is true in an early day in the judicial history of the state this court held that a bill of exceptions could not be taken from the ruling of a justice of the peace in cases not tried by a jury. (*Taylor v. Tilden*, 3 Neb., 339; *Kellogg v. Huntington*, 4 Neb., 96.) Those decisions have been adhered to and are the law of this state. These cases rest to some extent upon the ground that an adequate remedy is given by appeal. They refer to causes

tried before a justice of the peace upon the merits. In my view, they do not refer to special proceedings, as by attachment. In such case the only mode of review provided in the Code is on error. This is expressly provided for; but how can the case be reviewed unless the evidence upon which it was heard in the trial court is carried up to the reviewing court? The authority to review the action of the trial court carries with it the right to have all the testimony before the reviewing court. Otherwise, the right of review would be a vain proceeding, a delusion, and mockery of justice. As I understand the rule, statutes are, if possible, to be so construed as to give them force and effect, and not to annul their operation.

Section 16, chapter 20, Compiled Statutes, provides: "Orders for arrest and for attachments of property may issue in actions brought under this chapter, but when the demand in such action exceeds the jurisdiction of a justice of the peace, the proceedings upon such orders shall be the same, as near as may be, as in actions brought in the district court. The return day of such orders shall, when issued at the commencement of the action, be the same as that of the summons; when issued afterwards, they shall be made returnable forthwith." In the case at bar the amount involved amounts to nearly $900, and the statute declares that where the amount exceeds $200 "the proceedings upon such orders *shall* be the same, as near as may be, as in actions brought in the district court." What orders? All orders for arrest or attachments. Now by what authority does the court limit the word "proceedings"? All proceedings relating to the attachment, as I understand the meaning, include all that is done in relation to the same in the county court. If the case was tried in the district court, the preparation and signing of a bill of exceptions would be a part of the proceedings in that court. Is not the same true where the action is brought in the county court, where the amount involved exceeds $200? I be-

lieve the construction placed upon this language is forced and unnatural, and not only works injustice in the case at bar, but is calculated to do injustice.    The precise question here involved was before this court in *Osborne v. Canfield*, 33 Neb., 330; and it was held by a unanimous court that a county judge "may sign a bill of exceptions in any case where an attachment has been discharged by him." That question was the principal one presented in that case, and the right was sustained, and the rule should be adhered to.

But let us suppose that the Code provides no remedy. Then we have recourse to the remedies which existed under the former practice.    Section 901 of the Code provides: "Rights of civil action given or secured by existing laws shall be prosecuted in the manner provided by this Code, except as provided in the following section.    If a case ever arise in which an action for the enforcement or protection of a right, or the redress or prevention of a wrong, cannot be had under this Code, the practice heretofore in use may be adopted so far as may be necessary to prevent a failure of justice."    Under the former practice a writ of *certiorari* would be issued to certify up the record where there was no remedy by appeal or writ of error.    All attachment proceedings in this state are purely statutory, and if no other remedy exists, are reviewable by *certiorari.* (*Hartshorn v. Wilson,* 2 O., 28; *Learned v. Duval,* 3 Johns. Cas. [N. Y.], 141; *Dougan v. Arnold,* 4 Dev. L. [N. Car.], 99; *Branson v. Shinn,* 13 N. J. Law, 250; *Wilson v. Ray,* T. U. P. Charlt. [Ga.], 109; *Fryer v. Blackmore,* 1 Murph. [N. Car.], 94; 2 Spelling, Extraordinary Relief, sec. 1939.) It is very clear to my mind that the parties are entitled to have the record certified up, and that the judgment of the court below is right and should be affirmed.