JOHN H. HOPKINS v. BARRETT SCOTT, TREASURER.

FILED JANUARY 3, 1894. No. 5492.

1. **Statutes**: TITLES: PUBLIC FUNDS: DEPOSITORIES. Chapter 50, Session Laws, 1891, relating to the keeping of state and county funds, is not in conflict with the constitution, either as containing more than one subject, or because of its providing that it shall not apply until the expiration of the terms of office of the state treasurer and of the several county treasurers in office at the time of its passage.

2. **Repeal of Statutes.** That act did not operate to repeal article 2, chapter 18, Compiled Statutes, relating to the removal of county officers.

3. ———. Nor was article 2, chapter 18, Compiled Statutes, repealed by the act of 1879, specifying powers of county boards.

4. Where, in proceedings to remove a county officer, the officer complained against makes an appearance, obtains a continuance, and at the time to which the continuance was had proceeds to trial without further objection because of the time of hearing, he cannot upon proceedings in error be heard to urge that sufficient time was not allowed to prepare his defense.

5. Removal of County Officers: PROCEEDINGS OF SUPERVISORS. In such proceedings the fact that some of the supervisors who tried the case were also witnesses does not invalidate the judgment.

6. ———: ———: QUORUM. Nor is it necessary that all the members of the board of supervisors be present at the hearing. A quorum is sufficient.

7. Bill of Exceptions. There is no authority of law for the settlement of a bill of exceptions embodying the evidence taken on such hearing. MAXWELL, C. J., dissenting.

ERROR from the district court of Holt county. Tried below before BARTOW, J.

The facts are stated in the opinion.

*Reese & Gilkeson, H. E. Murphy*, and *M. F. Harrington*, for plaintiff in error:

In the absence of statutory power a board of supervisors is without authority to sign, settle, and allow a bill of exceptions. (*Taylor v. Tilden*, 3 Neb., 339; *Kellogg v. Huntington*, 4 Neb., 96; *Rudolph v. Winters*, 7 Neb., 127; *Nickerson v. Needles*, 32 Neb., 230; *State v. Oleson*, 15 Neb., 247; *Donahue v. Will County*, 100 Ill., 94.)

The board could act without all members being present. (*State v. Board of Supervisors of Saline County*, 18 Neb., 422.)

*John H. Ames, amicus curiæ*, filed a printed argument in favor of the validity of the act to provide for depositing state and county funds in banks.

*H. M. Uttley* and *R. R. Dickson, contra:*

A bill of exceptions can be properly and legally authen-

ticated and certified to by each member of the board of supervisors individually, and when certified to by a majority of the members constituting said board of supervisors, the same should be upheld, and considered by the courts. (Maxwell, Pleading & Practice [4th ed.], p. 717; *Law v. Jackson*, 8 Cow. [N. Y.], 746; *Kennedy v. Trustees of Covington*, 4 J. J. Marshall [Ky.], 543; *Darling v. Gill*, Wright [O.], 73.)

When a new statute is evidently intended to cover the whole subject to which it relates, it will by implication repeal all prior statutes on that subject. (*United States v. Barr*, 4 Sawyer [U. S.], 254; *United States v. Claflin*, 97 U. S., 546; *Dowdell v. State*, 58 Ind., 333; *State v. Rogers*, 10 Nev., 319; *Tafoya v. Garcia*, 1 N. M., 480; *Campbell v. Case*, 1 Dak., 17; *Andrews v. People*, 75 Ill., 605.)

The law under which the proceeding before the county supervisors was commenced has been repealed by implication. The board had, therefore, no jurisdiction over the subject-matter of the action, and was without power to conduct the examination. (*Stewart v. Otoe County*, 2 Neb., 177; *Sioux City & P. R. Co. v. Washington County*, 3 Neb., 42; *Sexon v. Kelley*, 3 Neb., 107; *People v. Commissioners of Buffalo County*, 4 Neb., 157; *Hamlin v. Meadville*, 6 Neb., 233; *State v. Buffalo County*, 6 Neb., 460; *McCann v. Otoe County*, 9 Neb., 330; *Walsh v. Rogers*, 15 Neb., 311; *State v. Lincoln County*, 18 Neb., 283.)

*G. M. Lambertson*, also for defendant in error:

The judgment of ouster rendered by the board of supervisors is fraudulent and invalid, because some of the supervisors sat as judges to try the accused, gave testimony against him, and then voted in support of the judgment of ouster. (*Vanderlip v. Derby*, 19 Neb., 165; *Foster v. Devenney*, 25 Neb., 73; *State v. Kaso*, 25 Neb., 608; *State v. Weber*, 20 Neb., 467; *Burnett v. Burlington & M. R. Co.*,

16 Neb., 334; *Ensign v. Harney*, 15 Neb., 330; *Tomlin-son v. Derby*, 14 Am. Law Reg. [Conn.], 543 ; *Stockwell v. Township Board of White Lake*, 22 Mich., 341.)

There should have been a full board present to hear the case. (*Hutchinson v. Ashburn*, 5 Neb., 402.)

Chapter 50 of the Laws of 1891 is unconstitutional, because it provides that the law shall not be enforced until 1893.   Section 24 of article 3 of the constitution, providing that no act shall take effect until three calendar months after the adjournment of the session at which it was passed, unless in case of emergency, is a limitation upon the legislative power to say when laws shall take effect. (Cooley, Constitutional Limitations, p. 188; *Wheeler v. Chubbuck*, 16 Ill., 361; *Board of Supervisors v. Keady*, 34 Ill., 293.)

The law is unconstitutional, because the bill contains more than one subject.   It applies to the public funds of both the county and state. (*White v. City of Lincoln*, 5 Neb., 505; *Burlington & M. R. R. Co. v. Saunders County*, 9 Neb., 507.)

IRVINE, C.

On March 1, 1892, John H. Hopkins filed his complaint before the board of supervisors of Holt county, charging that in November, 1891, Barrett Scott was elected county treasurer and qualified January 7, 1892, and then entered upon the duties of his office; that since the 7th day of January, 1892, Barrett Scott had been guilty of official misdemeanors and willful maladministration in his office in certain particulars specified in the complaint.   The matters particularly charged may be summarized as depositing in and loaning to certain banks different sums of money, being the moneys of Holt county which came into his hands as county treasurer, and receiving interest upon such money for his own use and benefit, and that said moneys were deposited to the individual credit of Scott and without any bond for the repayment thereof.   It was further

charged that Scott unlawfully removed the sum of $50,000 of the public moneys of Holt county upon the 26th day of February, 1892, and delivered $35,000 thereof to a certain bank in Omaha; and further, that he had received $150 in payment for certain certificates and had only entered one-eighth of the fees received therefor upon the books. A notice was served upon Scott requiring him to appear before the board of supervisors upon March 2, 1892, to answer the complaint. At the hour named, upon motion of Scott, the hearing was continued until the following morning, when, in the absence of Scott, a plea of not guilty was entered for him, and thereafter Scott filed objections to the jurisdiction of the board to try the case. These objections were overruled, whereupon further objections were made because every member of the board was not present. The record shows that two of the members were absent. Certain other objections were filed, some of which will be noticed hereafter, and finally it was determined that no further motions or pleadings be received except a motion to reject the complaint, a demurrer, or an answer. The board then proceeded to try the case. Scott was found guilty of the charges, and a judgment of ouster was entered. An attempt was made to secure a settlement of a bill of exceptions. Certain members of the board refused to sign the proposed bill, and upon *mandamus* proceedings they were compelled to do so. The case was taken on error to the district court, where it was heard upon the record, including the bill of exceptions settled in obedience to the writ of *mandamus*. In the district court a motion was made to quash the bill of exceptions, one of the grounds being that the allowance of the bill was not authorized by law. This motion was overruled. Upon the final hearing the judgment of the board of supervisors was reversed on the following grounds: First, that the board of supervisors had no jurisdiction of the subject-matter; second, that there was no evidence to sustain such judgment. There

are certain other findings in the judgment of the district court, but they all resolve themselves under the foregoing heads. The case is brought to this court upon error by Hopkins.

A great many questions are raised in regard to the accuracy of the bill of exceptions, and as to whether or not its allowance was regular; as to whether the district court had any authority to grant a writ of *mandamus* compelling its allowance; whether its signature by the majority of the supervisors, and not by every member, was sufficient; and as to whether there is any authority for a bill of exceptions in such a case. The conclusion reached upon the last of these questions removes all others from the case. It may be taken as settled that the right to a bill of exceptions is not implied from the right to prosecute proceedings in error, and that a bill of exceptions cannot be allowed except in pursuance of statutory authority. (*Moline, Milburn & Stoddard Co. v. Curtis*, 38 Neb., 520.) In the case cited the whole question is discussed at length and the authorities reviewed. There is no statutory authority for a bill of exceptions in such a case as this, and while the case last cited and those therein discussed are not exactly similar in their facts, the principles upon which they rest are precisely the same. We think, therefore, that the district court should have sustained the motion to quash the bill of exceptions, and erred in considering it as a part of the record in the case. It may be that the law should provide a method for bringing up the evidence in such cases as this as well as others, but, as said in *Moline, Milburn & Stoddard Co. v. Curtis, supra*, this rests with the legislature, and if the law is defective, the court cannot supply its defects.

With the questions raised by the bill of exceptions eliminated, few of the many questions presented in the briefs remain for decision. The first of these, however, is of vital importance, and is probably the point upon which the dis-

trict judge-based his decision. Compiled Statutes, chapter 18, article 2, provides for the removal of county officials for official misdemeanors, classified under eight heads, one of which is willful maladministration in office, and provides that any person may make such charge, and that the board shall have exclusive original jurisdiction thereof. Questions of fact must be tried as in other actions, and if the accused is found guilty, judgment shall be entered removing him from office.

By chapter 50 of the Laws of 1891 it was provided that county treasurers shall deposit in state or national banks doing business in the county, and of responsible standing, the amounts of moneys belonging to the several current funds of the county treasury; that said deposits shall be subject to check, and that interest shall be paid to the county of not less than three per cent per annum of the amounts so deposited. The act also provided for the keeping of accounts thereof and the giving of bonds by the depository for the safe keeping and payment of such deposits. The act also forbade the making of profit, directly or indirectly, by the county treasurer out of any money belonging to the county, and forbade the removal of any part of the county funds except for the payment of warrants or making deposits in pursuance of the act, and made such unlawful removal a felony. It also made a willful failure or refusal of the treasurer to perform his duties under the act a misdemeanor.

It is urged that the act of 1891 is unconstitutional, as containing more than one subject. The act provided both for the depositing of state funds and for the depositing of county funds, and it is contended that each of these forms a separate subject of legislation. The general object of the act is to provide for the safe custody of public funds, and it seems to us that this is a single subject of legislation, whether the funds are state or county. The object of the act is plainly expressed in its title, and the combination of

provisions in regard to both state and county fun'ds presents none of those objections which influenced the adoption of the constitutional inhibition against uniting two or more subjects in a single act.   In the recent case of *Trumble v. Trumble*, 37 Neb., 340, the effect of the clause of the constitution referred to was considered, its object discussed, and former decisions of this court reviewed.   It is not deemed necessary to repeat the discussion here.   We think the object of this act is single.   If it had related to the custody of all public funds of whatever description without separately naming them, no question could well be raised upon the point now urged; and the fact that the act, instead of using general language applicable to all public funds, in terms specified separately state and county funds, does not render it subject to the objection of duplicity.

It is also claimed that the act of 1891 is unconstitutional, because it provides that it shall not take effect until the expiration of the terms of the county treasurers current at the passage of the act.   It is said that this is in conflict with the constitutional provision that all acts shall take effect upon the expiration of three calender months after the adjournment of the legislature.   We think the limitation was one which could be properly made by the legislature.   The act, as an act, did go into effect under the constitutional provision referred to.   It became the law of the state from that time.   But the classes of persons to whom it applied only came into existence upon the expiration of then current terms of office.   Until three months after the adjournment of the legislature the act could not have taken effect, even though terms of treasurers might have expired during the interval.   After the constitutional period for the act to take effect had expired, it became the law, and has, as fast as the terms of treasurers expired, become operative.   It was the law from that time, although it may have been without practical effect for want of subject-matter to act upon.

The further contention is made that conceding the act of 1891 to be constitutional, it operated to repeal article 2, chapter 18, Compiled Statutes, and left the county board without jurisdiction to try the case.    This argument is based upon the fact that the act of 1891 renders criminal a failure or refusal of the treasurer to obey its provisions, and it is argued that inasmuch as maladministration in these particulars was made a criminal offense, the remedy provided by the act is exclusive.    Repeals by implication are not favored, and an act will not be held to repeal a former act unless the repugnancy between the two is plain and unavoidable. (*Lawson v. Gibson*, 18 Neb., 137; *State, ex rel. Berry, v. Babcock*, 21 Neb., 599.)    There is no repugnancy between these two acts.    The commission by a treasurer of crimes created by the act of 1891 would not, *ipso facto*, remove him from office.    It would require a conviction at least to do so, and the county need not await such conviction before removing him from office.    The object of article 2, chapter 18, Compiled Statutes, is not to punish an officer for criminal acts, but simply to protect the county by removing him from office.    The proceedings thereunder are in some ways analogous to proceedings in impeachment, and by the express terms of the constitution a conviction upon impeachment is no bar to a prosecution for the same offense as charged in the impeachment. (Constitution, art. 3, sec. 14.)    There is no reason why an unfaithful county officer should not be removed from office because of his infidelity and also be punished criminally for the same act, provided it amounts to a crime.    We repeat that there is no repugnancy between the provisions of the Compiled Statutes referred to and the act of 1891. They can both be enforced without conflicting with one another, and upon well established principles they should both be held to be in force.

For similar reasons we cannot concur in the views of defendant in error, that the act of 1879, specifying certain

powers as belonging to the county board, operated, by omitting reference to the powers conferred by article 2, chapter 18, to repeal that article.

The transcript of the proceedings of the board of supervisors shows the rulings of the board upon certain questions of evidence. In no case, however, does it state more than the question asked to which objection was made and the ruling thereon. This is not sufficient to enable the court to pass upon the admissibility of the evidence. The answers do not appear. The offers of proof do not appear, and there is not sufficient to enable the court to determine the nature of the evidence. It is even doubtful whether as much as does appear was properly incorporated into the minutes of the board.

Some objection was made because of the insufficiency of the time allowed to the defendant before the trial. It does appear that the action of the board was somewhat summary, but the defendant seems to have obtained a continuance upon his own motion, and we do not think that after such proceedings he can be allowed to urge this objection. At the time when the case was taken up for trial he proceeded without objection upon this ground.

The objection that all the members of the board were not present at the trial is not well taken. There is no express provision of the statute in this regard, and in the absence of special provisions, the general laws in regard to proceeding by a quorum must be held applicable. The constitutional provisions relating to the supreme court sitting as a court of impeachment are not applicable.

Counsel for Scott made objections to the board's deciding the case, because certain members of the board were witnesses. Regarding the proceeding as a strictly judicial inquiry, this would not oust the court of jurisdiction. A judge or juror may be called as a witness, and is not from that fact alone disqualified from sitting in judgment on a case. (Thompson, Trials, sec. 77, note 5, and cases there cited.)

Certain other objections appear in the record, but the facts upon which they are based do not, and their merits, therefore, cannot be considered.

We do not think that the record of the proceedings of the board of supervisors discloses any error. The complaint sufficiently charges offenses amounting to maladministration in office, and the evidence must be presumed to support the complaint and judgment. The judgment of the district court is reversed and that of the board of supervisors affirmed.

JUDGMENT ACCORDINGLY.