BURGESS-NASH BUILDING COMPANY, APPELLANT, V. CITY OF OMAHA, APPELLEE.

FILED MAY 11, 1928. No. 25281.

*John P. Breen* and *William H. Herdman*, for appellant.

*Dana B. Van Dusen, John F. Moriarty, Thomas J. O'Brien*
and *Bernard J. Boyle, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON,
EBERLY and HOWELL, JJ., and REDICK, District Judge.

GOOD, J.

This is an action to have special taxes, levied against
plaintiff's real estate, adjudged void and to enjoin their
collection. A general demurrer to plaintiff's petition was
sustained. Plaintiff elected not to further plead. Its
action was dismissed, and it has appealed.

The taxes in question were levied for special benefits
accruing to plaintiff's real estate by reason of the widening
of Harney street between Twentieth and Twenty-fourth
streets, in the city of Omaha. In its petition plaintiff set
out in detail the proceedings by which the defendant city
condemned and appropriated private property for widening
of the street and levying of the special taxes, and alleged
that the taxes are void for many reasons. We shall con-
sider only those which are necessary to a proper determi-
nation of the case.

The condemnation proceedings were begun in 1919 under
the law as it then existed. This law was amended in 1921,
and the proceedings completed under the later law. Plain-
tiff alleged that section 57, art. III, ch. 116, Laws 1921,
being section 3610, Comp. St. 1922, applicable to the pro-
ceedings, is "unconstitutional and void for that the same
does not provide a lawful and constitutional method for
the payment of property appropriated or attempted to be
appropriated by the defendant city under the provisions
of this section."

In 1919, section 4330, Rev. St. 1913, regulated condemnation proceedings of the character here involved. Said section provided that whenever it became necessary to appropriate private property for the use of the city for streets, or for other purposes authorized by section 4329, Rev. St. 1913, such appropriation should be declared necessary by ordinance, and the mayor, with the approval of the council, was required to appoint three disinterested freeholders of the city who, after notice to the owners of, and parties interested in, the property to be taken, should assess the damages to the owners of the property and the persons interested therein; that such assessments should be reported to the city council for confirmation, and if the report should be confirmed the damages so assessed should be paid to the property owners, and with a further proviso that, in all cases involving an amount of $50,000 or more, there should be appointed five appraisers, and the assessment, if recommended for approval by the city council and confirmed by the mayor and city council, must be submitted to the electors at a general or special election. In the instant case, the ordinance was passed declaring the necessity for appropriating the property for the purpose of widening Harney street between Twentieth and Twenty-fourth streets, in Omaha. Thereafter the mayor, with the approval of the city council, appointed five disinterested freeholders of the city of Omaha to assess the damages to the owners, respectively, of the property taken by the appropriation declared necessary by the ordinance. The freeholders so appointed made their appraisement and awarded to the owners of the property taken a sum amounting, in the aggregate, to $187,465.16, which was reported to the council. At a later date the city council approved and adopted the report of the appraisers. At this point the matter seems to have been referred to the legal department of the city for examination and report, and thereafter and in October, 1920, the city council rescinded its former approval of the appraisement, and the matter thus stood until after the statute had been changed by the enactment of a

new charter for the city of Omaha, which became effective on the 20th of April, 1921, known as chapter 116, Laws 1921. The council then reapproved the report of the appraisers.

Section 57, art. III, ch. 116, Laws 1921, now appearing as section 3610, Comp. St. 1922, relating to the subject of eminent domain, among other things provides that the city council may acquire, by the exercise of the powers of eminent domain, private property for streets and for the purpose of widening or extending the same; that, whenever it becomes necessary to appropriate property for the purposes provided by the act, the purpose of and necessity for such appropriation shall be declared by ordinance, and thereupon the council shall appoint three disinterested freeholders of the city who, after giving notice to the owners of, or parties interested in, the property to be appropriated, shall appraise and assess the damages occasioned by the taking of such property; that, whenever the purpose of the proceedings is to acquire property for streets or adding to or enlarging, widening or extending them, and the amount of the appraisal does not exceed $100,000, the council may thereupon confirm or reject the same. If the report be confirmed, then provision is made for the payment of the awards by the assessment of special benefits, and for the issuance by the council of bonds for any excess of the appraisement over special benefits. The section further provides:

"If the amount of the appraisal as reported by the appraisers exceeds $100,000, the council shall thereupon approve or reject said report within 120 days after the same is filed, and if said report be approved the council will thereupon appoint a committee of not less than three of its members who shall carefully examine and investigate the proposed improvement for the purpose of determining as nearly as possible the amount of special benefits which would result from the proposed improvement, if carried forward. The committee may procure assistance in such work when deemed necessary to a proper performance

thereof. Immediately upon completion of its duties, the committee shall file its report with the city council stating the total amount in dollars and cents, which in its judgment and within its finding may be assessed as special benefits against the property which would be especially benefited. The city council shall thereupon examine such report, it may approve it as reported, or it may increase or reduce the amount of such report or otherwise alter or modify it, and approve it as so altered, or it may reject such report. If rejected, a new or further report may be called for or the proceedings may be abandoned. If the amount so determined and found and finally approved does not equal or exceed 90 per cent. of the amount of the appraisal as reported and tentatively approved by the council, then such proceedings shall be abandoned, unless and until authority has been obtained from the electors to issue bonds to pay the excess of the costs of the improvements, as determined by the appraisal, over the amount which may be assessed as special benefits against the property specially benefited, as determined by the approved report of the committee."

Then follows provision for submitting the proposition to the electors. The section further provides:

"Whenever the approved appraisal in such proceedings exceeds the sum of $100,000 and the approved amount which may be assessed as special benefits reported by the committee exceeds 90 per cent. of the amount of the appraisal, then the council is authorized to issue bonds without a vote of the electors for the purpose of paying the difference between the amount of the approved report of the appraisers and the *amount which may be taken care of by special assessment,* and it is authorized and required to levy special taxes upon the property specially benefited and to the extent of special benefits for the purpose of paying the remaining balance of the appraisal of damages.

"The foregoing provisions, or any part thereof, in so far as the same may be applicable or may be made applicable to proceedings pending at the time of its enactment or any part of such proceedings, may be availed of, used and ap-

plied in such proceedings, or any part thereof, and such pending proceedings or part thereof to which such provisions may be applicable shall be consummated under the provisions of this act." (Italics ours.)

It will be observed that the statute contemplates three distinct methods of procedure, the first being applicable to cases where the appraisal of damages, occasioned by the taking of property for public use, does not exceed $100,000. The second method is applicable to a situation where the appraisal of damages exceeds $100,000, and where the amount which may be raised by special assessments, as determined by the council's approved report of its committee, does not equal 90 per cent. of the appraisal of damages. The third method of procedure applies where the amount of appraisal of damages exceeds $100,000, and where the council finds that 90 per cent. or more of such appraisal can be raised by special assessments.

Counsel for plaintiff concede that the first method provides an adequate fund and method of paying for the damages for property appropriated, but contend that the second and third methods do not so provide, and that they are therefore unconstitutional and void, in that they may permit the taking of private property for a public use without making just compensation.

In the instant case the committee of the council appointed to ascertain the amount that could be raised by special assessments reported that the sum of $182,335.91 could be so raised, which is more than 90 per cent. of the appraisal of damages. Thereupon, the council approved such report and proceeded to complete the condemnation proceedings in the manner as provided in the third method. Since the second method is not involved in this case, we are not concerned as to whether that method is valid and constitutional. The third method is applicable to and the one followed in the instant case.

Counsel for plaintiff strenuously contend that the statute contemplates the council shall take the report of its committee as to the amount that may be raised by special as-

sessments, and when such report is approved by the council it is then authorized to issue bonds for the difference between the amount so reported and approved and the amount of the appraisal of damages; and it may follow that, when the council, sitting as a board of equalization, equalizes and levies special assessments, the amount so raised may not equal the amount of the approved report of the committee; and if the amount so actually levied for special benefits is less, then an adequate fund has not been provided to pay for the damages for property taken.

We think a very close analysis of the statute will not bear this interpretation. The language of the statute is: "Then the council is authorized to issue bonds without a vote of the electors for the purpose of paying the difference between the amount of the approved report of the appraisers and the amount which may be taken care of by special assessment." It does not fix the amount of bonds as the difference between the approved report of the committee to ascertain the amount of special benefits and the appraisal of damages, but authorizes the council to issue bonds for the difference between the amount of the damages as approved and the amount which may be taken care of by special assessments. This language clearly implies that assessments for benefits should be made before bonds are issued. Nowhere in the statute does it require the issuance of bonds first. The council may first sit as a board of equalization, ascertain and determine precisely the amount that may be assessed for special benefits, and, after having done so, then it may issue bonds for the difference between the amount which may be taken care of by special assessments and the amount of the approved report of the appraisers to ascertain damages. If this is the proper interpretation of the statute, as we believe it to be, then it follows that an adequate fund is provided with which to pay for the property taken for and damaged by the improvement.

If the interpretation of the statute for which plaintiff contends would render it unconstitutional and void, or of

doubtful validity, and the statute is susceptible of another construction which would make it valid and free from doubtful validity, then the latter construction is to be preferred. When the constitutionality of a statute is questioned, it is a rule of the courts and also a rule of construction to adopt such construction as will make the statute constitutional, if its language will permit. *Union Stock Yards Co. v. Nebraska State Railway Commission,* 103 Neb. 224; 25 R. C. L. 999, sec. 242; 25 R. C. L. 1000, sec. 243.

Counsel complain that the amount of damages for property taken was not ascertained by a committee of three disinterested freeholders, as by the present statute provided. It may be observed, however, that under the law as it existed in 1919 the statute authorized the appointment of a committee of five freeholders where the amount involved was more than $50,000, and, according to another portion of section 57, heretofore quoted, the council was at liberty to carry on to completion under the new act a condemnation proceeding brought under the new law as it had previously existed. It follows that the council was justified in taking up the condemnation proceeding at the point to which it had been carried under the old law, and thereafter completing it under the new law. It was not required to abandon the proceeding begun under the old law, but could make use thereof and carry the proceeding to completion under the new law. Under the facts disclosed, we hold that the appraisal by a committee of five freeholders is valid.

Counsel for plaintiff contend that the city council did not appoint a committee of three of its own number to ascertain and report the amount that might be raised by special assessments, as provided by the statute. It appears that the council, instead of directly appointing three of its own members, adopted a resolution by which it authorized the mayor to name three members of the council to act as such committee, and that, pursuant thereto, the mayor designated three members of the council to act as such committee. The mayor did not make the appointment upon

his own initiative, but the council itself took the initiative to secure the appointment of a committee of its number. Instead of naming the committee itself, it requested the mayor to name three of its members. The committee accepted the appointment, performed its duty and reported, and the council adopted and approved its report. In adopting and approving its report, the council, in effect, adopted and approved the appointment of the committee. While we are aware that it is a general rule that, in condemnation proceedings to take private property for public uses, every jurisdictional requirement must be strictly followed, yet we think the manner of appointment of this committee by the council was not a jurisdictional matter. The report of the committee was tentative only. It did not fix a tax upon the plaintiff's or any other person's property. It only formed the basis for the action of the council, and the council was authorized either to modify or alter the report and to approve or reject it as modified or altered. We are of the opinion, however, that the appointment was, in effect, made by the council, and that the proceeding is not invalidated by the manner in which it appointed its committee.

Counsel for plaintiff contend that the tax is void because the condemnation proceeding was not carried to completion under the law as it existed in 1919. As heretofore pointed out, it was not necessary for it so to do. It was authorized to complete the proceeding under the new law.

Plaintiff argues that the special tax in question is void because it was levied without notice to property owners and without an opportunity of a hearing, and that it, therefore, amounts to the taking of plaintiff's property, in violation of the "due process" clause of the Fourteenth Amendment to the federal Constitution. The argument is based upon the assumption that when the city council approved the tentative report made by its committee, wherein it fixed the amount of benefits which, in its judgment, could be raised by special assessments, such approval finally de-

termined the amount of tax that may be levied, in the aggregate, against the property.

This question might be dismissed without consideration because it is not raised by any averments in the petition; nor is it among the errors assigned for a reversal of the judgment. However, it is quite clear from an examination of the statute, heretofore quoted, that the report of such committee does not fix the amount of tax, either in the aggregate or which may be levied and assessed against a particular parcel of property. The amount of the tax is not fixed upon any property; nor is the aggregate determined until the council sits as a board of equalization, at which time the amount of tax levied against any parcel of real estate is determined and the aggregate then finally fixed. Each property owner is given notice of the sitting of the board of equalization and is accorded an opportunity to appear before the board and protest, and, if he feels aggrieved at the action of the board, he is given an opportunity to appeal to the district court. It is not essential that the property owners should be given notice and an opportunity to be heard before the committee of the council which reports tentatively upon the amount of special benefits. It is sufficient, in order to comply with the "due process" clause of the Fourteenth Amendment to the federal Constitution, that at some stage in the proceedings the property owner is given an opportunity to be heard as to the amount of tax that may be levied against his property. The taxes levied in this instance are not vulnerable to the objection presented.

After a careful examination of the record and all questions that have been presented, we are convinced that the judgment of the district court in sustaining the demurrer is right, and it is therefore

AFFIRMED.