JOHN J. WILSON ET AL., PLAINTIFFS, V. FRANK MARSH, SECRETARY OF STATE, DEFENDANT, STANLEY BARTOS ET AL., INTERVENERS.

75 N. W. 2d 723

Filed March 17, 1956. No. 33924.

238

*Van Pelt, Marti & O'Gara,* for plaintiffs.

*Flansburg & Flansburg,* for defendant and interveners.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

The object of this litigation is to secure an adjudication that seven designated judges of the district court of Nebraska, each of whom are or will be more than 70 years of age on January 3, 1957, are ineligible to be candidates for, to be elected to, or to hold the office of judge of the district court for the term beginning on that date and to enjoin the Secretary of State from certifying the names of said persons to any election official as candidates for the office of district judge.

Plaintiffs allege that: They are residents of the State of Nebraska and are electors and taxpayers in the city and county where they are respectively domiciled. Frank Marsh, the defendant, is Secretary of State of Nebraska and has the legal duty of certifying the names of persons for whom nomination papers have been filed in his office for judge of the district court to the proper election officials of the counties of the state before the official ballots are printed for the primary elections in the state. A state-wide primary election will be held therein on May 15, 1956. Nominations for judge of the district court in each of the judicial districts will be made at the primary election and defendant is obligated to certify to the proper election official of the counties of the state at the time and in the manner required by law

the names of candidates for the office of judge of the district court. Prior to September 18, 1955, Harry D. Landis, Stanley Bartos, Lyle E. Jackson, Herbert Rhoades, Arthur C. Thomsen, James M. Patton, and Isaac Johnson Nisley, judges of the district court, hereafter referred to as the judges, each filed in the manner provided by law as a candidate for election to the office of judge of the district court.

The Legislature of Nebraska at its 1955 regular session enacted Legislative Bill No. 38, known as the Judges Retirement Act, which provides for the retirement of district judges of the state at the age of 70 years and for retirement annuity for each retired judge of the district court to be paid in part from revenue to be provided by taxation and thereby the legislation affects revenue of the state. The Judges Retirement Act became effective on September 18, 1955. Each of the seven persons above named who has filed as a candidate for the office of judge of the district court is ineligible by virtue of the provisions of the retirement act to serve in the office for which he has filed because he is now a judge of the district court and on the date of the commencement of the term, January 3, 1957, each of said persons will be over the age of 70 years and will be subject to retirement with the financial benefits provided by the act. That the Secretary of State will, unless prevented by action of the court, certify to the proper election officials to be placed on the official primary ballots the names of the seven persons who have filed as candidates for the office of judge of the district court in their respective judicial districts.

Plaintiffs seek to have the seven persons who are incumbent judges of the district court adjudged to be ineligible candidates for the office and to have the defendant enjoined from certifying their names as candidates for the office to be voted on at the next primary election.

The answer of the defendant admits that plaintiffs

are residents of Nebraska and are electors and tax-payers in the city and county named for each of them in the petition; that Frank Marsh is Secretary of State of Nebraska; that there will be a general primary election held in Nebraska on May 15, 1956, at which candidates for the office of district judge in each judicial district in the state will be nominated by the electors; and that it is the duty of the Secretary of State to certify at the time and in the manner provided by law to the county clerk or the election commissioner, as the case may be, in each county in which any electors may vote for such office the list of names of each person for whom nomination papers have been filed for the office of district judge in each judicial district.

The answer of defendant also asserts that: Harry D. Landis, Stanley Bartos, Lyle E. Jackson, Herbert Rhoades, Arthur C. Thomsen, James M. Patton, and Isaac Johnson Nisley were elected to the office of district judge at the general election in November 1952, each for a term of 4 years commencing on January 8, 1953, and continuing to January 3, 1957. They qualified, became, and are now district judges serving said term. Each was born on or about the date stated in the petition and each has performed all acts required by statute to be done by him to become a candidate in his respective district for nomination for the office of district judge at the general primary election to be held May 15, 1956.

At the time the district judges named above were elected to office the salary of the judges had been fixed by the Legislature at $7,400 per annum payable in equal monthly installments. They have each served since the commencement of their term as aforesaid, each in his respective district, each has received and accepted the salary aforesaid, and each is entitled to be paid $7,400 per annum, payable monthly, during the term of office, without change, increase, impairment, or reduction by the Legislature. The Judges Retire-

ment Act of Nebraska became effective September 18, 1955, and each of said judges had more than 15 months thereafter to serve of the term for which they had been elected as aforesaid.

At the time of the election of the district judges the Constitution of the State of Nebraska provided that the Legislature shall never grant any compensation to any public officer, agent, or servant after the services have been rendered nor shall the compensation of any public officer, including any officer whose compensation is fixed by the Legislature subsequent to the adoption hereof, be increased or diminished during his term of office. The Judges Retirement Act has reduced the salary of each of the district judges above named by requiring that the Auditor of Public Accounts deduct each month from the monthly salary owing to each judge 4 percent thereof and place it in the Judges Retirement Fund. This is a reduction of salary of $24.67 and for the 15 months during the balance of the term for which each judge was elected amounts to a total reduction of salary of each judge of $370 during his term of office, in violation of the provisions of the Constitution above stated, and this provision of the Judges Retirement Act is unconstitutional and void. The Judges Retirement Act provides for retirement pay for services to be rendered by each district judge from and after the effective date of the act, September 18, 1955, measured in part by his total years of service both prior to and after the act became effective, by the payment of a life annuity after his services have terminated which constitutes extra and increased compensation to a salary of $7,400 per annum fixed by statute at the time he was elected and it is an increase in his compensation effective during his term of office, in violation of the provisions of the Constitution of the state above stated, and hence this provision of the Judges Retirement Act is unconstitutional and void.

Each of the judges above named is entitled by pro-

visions of the Judges Retirement Act to a life annuity as follows: Harry D. Landis, Herbert Rhoades, Arthur C. Thomsen, and Isaac Johnson Nisley each approximately $400 per month, Stanley Bartos and Lyle E. Jackson each approximately $287 per month, and James M. Patton approximately $123 per month. The retirement annuities provided by the act are proposed to be paid in substantial part from revenue to be raised by taxation. Frank Marsh is a resident and taxpayer of Lincoln, Lancaster County, Nebraska, and his interests as such taxpayer will be adversely affected by the contributions to be made for the payment of the annuities through taxation because such purpose is illegal. Any money raised by taxation by virtue of the act and applied to the payment of annuities will be used for an unlawful and unauthorized purpose and for payments that are illegal and in violation of the provisions of the Constitution of Nebraska above stated. Each of the annuities above described have by provisions of the act become, if valid, a present valuable annuity right to the judges as above set forth. The annuities are a part of the present compensation for the duties to be currently performed by the judges in their official capacity from and after September 18, 1955, although the payment of such compensation by way of annuity is deferred and is to be paid after the services have been rendered and the official position terminated. The Judges Retirement Act because of the reasons alleged and by reason of the changes in the compensation of the seven judges during their term of office as set forth is a violation of the Constitution of Nebraska and the act is in its entirety unconstitutional and invalid.

The defendant as Secretary of State will, unless prevented by action of the court, certify the names of the seven persons herein described as district judges to the proper election official of each county within which electors may vote for the office of district judge for placement on the ballot at the said general primary

election to be held as aforesaid. Defendant asks that the action be dismissed.

Stanley Bartos, Lyle E. Jackson, Arthur C. Thomsen, James M. Patton, and Isaac Johnson Nisley filed a petition in intervention in which they alleged their interest in the subject matter of this action, asserted that all the allegations of fact set forth in the answer of Frank Marsh, Secretary of State, filed herein are true, and that the interveners adopted the same for their answer to the same extent and effect as though said entire answer were incorporated in the petition of intervention.

Plaintiffs have interposed a general demurrer to the answer of the defendant and to the petition of intervention. The facts well pleaded and the inferences therefrom are admitted. The litigation must be resolved as a matter of law. Kinney Loan & Finance Co. v. Sumner, 159 Neb. 57, 65 N. W. 2d 240.

In the following discussion of the case Frank Marsh, Secretary of State, will be designated as defendant. He and the interveners will be generally spoken of as defendants. The seven incumbent judges named in the pleadings will be referred to as the judges.

This action was commenced in this court. The cases of which this court may acquire original jurisdiction are few. They are limited to those of a civil nature in which the state is a party, cases relating to revenue, mandamus, quo warranto, and habeas corpus. Art. V, § 2, Constitution of Nebraska. This provokes inquiry as to what fact exists in this case which solicits and justifies exercise of original jurisdiction by this court. There is a single opportunity for the cause to be within the reach of the original jurisdiction of this court and that is that it is a case relating to the revenue within the meaning of the constitutional provision. The validity of the Judges Retirement Act is the issue in the case. Laws 1955, c. 83, p. 243; §§ 24-701 to 24-714,

R. S. Supp., 1955. This act authorizes and requires a substantial fund for implementing the retirement plan promulgated by it to be furnished by appropriations by the Legislature. The Legislature which passed the act made an appropriation to assist in originating and supplementing the fund. This court has said that the word "revenue" is broad and general and includes all public money which the state collects and receives from whatever source and in whatever manner. City of Omaha v. Hodgskins, 70 Neb. 229, 97 N. W. 346; State v. Stanton County, 100 Neb. 747, 161 N. W. 264. The contesting litigants each aver that the cause relates to the revenue of the state. The conclusion is inescapable that this is correct.

The Judges Retirement Act creates in the state treasury a fund denominated the Nebraska Retirement Fund for Judges to be administered by the Board of Educational Lands and Funds and to which is required to be credited all money appropriated or transferred by law thereto. The act exacts that each judge within its specifications shall contribute monthly 4 percent of his monthly salary to the fund. The method and manner of the contribution is that the Auditor of Public Accounts is by mandate of the act required to make a deduction of 4 percent on the monthly pay roll of each judge, showing the amount to be deducted and its credit to the fund. The additional amounts provided for the retirement fund are a fee of one dollar taxed as costs in each civil cause of action or proceeding filed in the district court and an appropriation biennially in such amount as may be determined by the Legislature to enable the fund to meet anticipated claims. The fund may be used only for the payment of all annuities and other benefits created by the act and shall not be used to pay expenses of the administration thereof. The deductions required by the act as stated above have been and are being made commencing with September 18, 1955. This amounts to about $370 from the salary of

each of the judges of the district court during the un-expired part of the present term.

The retirement pay is determined by the length of the service of the judge and by applying a percentage of the amount of salary he receives at the time of his retirement or at the time he arrives at the compulsory retirement age. The right, if the act is valid, to the provided amounts of retirement pay based upon retirement age, length of service, and amount of present salary ranges as to the several interveners from $123 per month up to $400 per month for their lifetime. These amounts will be in addition to salary.

The State of Nebraska retains 4 percent of the monthly salary of each judge within the act and credits the amount retained to a fund of its designation without participation in any way of the public official. These deductions are the retention of public money. They continue to be public money and the fund is a public one. The amount withheld by the state from the salary of judges never was and never will become their money or property. The annual salary of each fixed by law then earned and required to be paid in equal monthly installments is decreased by the amount deducted during his term of office.

The act has provisions for distribution of the retirement fund and there are instances, if named conditions are satisfied, that an amount equal to the amount which has been withheld by the state will without interest be the distributive share of the fund paid to the judge at some more or less remote future time. The payments are contingent. If a member dies his equivalent of the amount withheld from his salary will never have been received by him. A payment to his estate or to some other person is not a payment to the judge who earned the salary. The payment of the equivalent of the amount withheld from the salary of a judge at a later time does not satisfy the obligation of the state to pay him his salary as earned and as is specified by law. Any

payment from the fund determined by the amount withheld from his salary is not even pretended in the act to be made as a deferred payment of salary but it is a distribution, when it occurs, of the share of deferred compensation from the retirement fund the recipient is entitled to have by virtue of the terms of the act. The benefits to be paid to a judge whose tenure of office has been 10 years or more is not measured by the amount of the deduction from his salary. He is, on the termination of his service or on his retirement, entitled to be paid such annuities as are specified in the act.

The salary of each of the judges affected by the Judges Retirement Act is fixed by statute and it characterizes his compensation as an annual salary and it is thereby made payable and required to be paid in "equal monthly installments." § 24-301.01, R. S. Supp., 1955. A judge has the right by virtue of the law to receive his annual salary during the year in which it is earned in equal monthly installments. There is no lawful right for any part of it to be withheld from him. If any amount is taken from his salary by arbitrary legislative fiat the judge has not received it. He cannot identify any portion of the fund to which the deduction from his salary has been credited as belonging to him. The amount deducted has never become his. It has not been and neither will it ever become his property. It has been withheld from him and his salary has been diminished. This is a violation of the constitutional guaranty that the compensation of a public official shall not be diminished during his term of office. Art. III, § 19, Constitution of Nebraska.

Lickert v. City of Omaha, 144 Neb. 75, 12 N. W. 2d 644, concerned the police pension law applicable to Omaha which created a police relief and pension fund and contained the following: "A sum not to exceed one dollar of the monthly * * * salary * * * of each member of the police department, which sum shall be de-

ducted monthly by the comptroller from the \* \* \* salary \* \* \* of each and every member of the police department, and the comptroller is hereby authorized, empowered and directed to deduct the sum as aforesaid and forthwith to pay the same to the treasurer of the said police relief and pension fund." Plaintiffs were members of the police force of Omaha and they alleged that they became such members with the agreement that the pensions provided by statute were part of the compensation for their services; that they permitted the city to withhold one dollar monthly from their salary to be placed in the relief and pension fund; that thereby there was created a contract between the plaintiffs and the city; that plaintiffs had performed their part of it; and that they had vested rights and interests in the relief and pension fund that could not be disturbed or denied. This court denied the contentions of plaintiffs and determined that the deduction of contributions from the salary of policemen for the benefit of the relief and pension fund was a reduction of their salaries so that their salaries became fixed in the net amount that was paid the policemen and the court also concluded that they had no vested right by virtue of the deductions in the fund created by them. The language of the court follows: "We have heretofore set out that plaintiffs alleged they entered the service with the agreement that the pension as provided at the time was a part of their compensation and that they 'permitted' the defendants to withhold from their salaries the sum of one dollar each month to assist in the creation of the pension fund; and that 'thereby there was created \* \* \* a contract.' There was no evidence of any such agreement having been made. The charter provision as it existed prior to the amendment provided for payment to the treasurer of moneys from various sources 'to constitute a police relief and pension fund, viz.: \* \* \* sixth. A sum not to exceed one dollar of the monthly pay, salary or

compensation of each member of the police department, which sum shall be deducted monthly by the comptroller from the pay, salary or compensation of each and every member of the police department, and the comptroller is hereby authorized, empowered and directed to deduct the sum as aforesaid and forthwith to pay the same to the treasurer of the said police relief and pension fund.' Comp. St. 1929, sec. 14-610. The provisions of this act do not support the construction that the members 'permitted' the deduction of sums from their pay. The deduction, by the clear provisions of the act, is mandatorily made before their salary is paid. * * * such a provision in legal effect says that the officer shall receive each month the net amount payable to him." The reasoning and conclusion of that case are applicable to the present case and make it certain beyond doubt that when the state deducts from the salary an amount to create a pension or retirement fund without the direction or consent of the salaried officer the exaction is a deduction of that amount from the salary and a diminution of compensation to that extent. That decision applied to this case establishes that the judge receives as his compensation not the annual salary the statute designates but only the net amount as reduced by the amount withheld by the state that is credited to the retirement fund. The inescapable effect is that the Judges Retirement Act diminishes the salary of public officers during their term.

Pennie v. Reis, 132 U. S. 464, 10 S. Ct. 149, 33 L. Ed. 426, often characterized as a leading case, considered a statute of California which created a fund identified as the police life and health insurance fund for the benefit of the members of the police force of San Francisco and required the treasurer of the city and county to retain from the pay of each police officer the sum of two dollars per month to be paid into the fund. There was a provision that upon the death of any member of the police force after a specified date there

should be paid from the fund to his legal representative the sum of $1,000. Subsequent legislation repealed the original act and created a new fund called a police relief and pension fund which provided for a transfer to it of the amount in the original fund and made new and different provisions for the distribution of the new fund. The plaintiff was the administrator of a deceased policeman who served the city during the existence of the original legislation and for some time after the new act became effective. The suit was to recover $1,000 from the life and health insurance fund which then amounted to many times the sum sought to be recovered. The opinion in part said: "Notwithstanding, therefore, in this case, the petitioner avers that the deceased police officer contributed out of his salary two dollars a month, pursuant to the law in question, and, in substance, that the fund which was to pay the one thousand dollars claimed was created out of like contributions of the members of the police, the court, looking to the statute, sees that, in point of fact, no money was contributed by the police officer out of his salary, but that the money which went into that fund under the act of April 1, 1878, was money from the State retained in its possession for the creation of this very fund, the balance—one hundred dollars—being the only compensation paid to the police officer. Though called part of the officer's compensation, he never received it or controlled it, nor could he prevent its appropriation to the fund in question. He had no such power of disposition over it as always accompanies ownership of property. * * * If the two dollars a month, retained out of the alleged compensation of the police officer, had been in fact paid to him * * *and after such payment he had been induced to contribute it each month to a fund on condition that, upon his death, a thousand dollars should be paid out of it, to his representative, a different question would have been raised * * *. It is sufficient that the two dollars retained from the police

officer each month, though called in the law a part of his compensation, were, in fact, an appropriation of that amount by the State each month to the creation of a fund for the benefit of the police officers named in that law * * *." See, also, Hughes v. Traeger, 264 Ill. 612, 106 N. E. 431; Helliwell v. Sweitzer, 278 Ill. 248, 115 N. E. 810.

The essence of that decision is that deductions from the salary of the public officer were not voluntary and were not contributions by him; that he never received the amount withheld but it was and remained public money; and that the amount retained was a deduction from his salary and it was decreased to that extent.

The primary purpose of the constitutional prohibition against diminution was not to benefit the public official but the public. Such being its purpose it is to be construed not as a private grant but as a limitation imposed in the public interest; not restrictively but in accord with the spirit and the principle on which it proceeds. Obviously diminution may be effected in many ways. Some may be direct and others indirect or even evasive but the prohibition is inexorable. All which by their necessary operation and effect withhold or take from the public officer a part of that which has been promised by law for his services must be regarded within the inhibition. Nothing short of this gives full effect to its spirit and principle.

The benefit of a retirement system is a form of compensation additional to the regular salary of a member of the system with payment deferred to a later time. The increase in the compensation results when the grant is made and when the recipient of the benefits of the act begins his service and commences to earn the additional remuneration. The benefit of the retirement system awarded to a member thereof who renders services under the act creating the system after its enactment is not a grant of extra compensation after the services are rendered which the Constitution

condemns because the increase in pay is granted immediately and from the date of the grant is being currently earned. It is obviously not compensation granted after service had been rendered. It is the payment thereof alone which is deferred to a later date. If the services are rendered and terminated before the grant is made the benefits awarded are not compensation but are a gratuity.

A decision involving this subject often and favorably referred to is State ex rel. Haberlan v. Love, 89 Neb. 149, 131 N. W. 196, 34 L. R. A. N. S. 607, Ann. Cas. 1912C 542. It concerned the statute of 1895 providing that cities of the first class should pay a benefit to a retired fireman of 25 percent of his salary when he should have retired and should have served 20 years before retirement. Plaintiff was a retired fireman of Lincoln who had served a part only of his 20 years after the enactment of the statute at the time of his retirement on April 1, 1904. He was then receiving a salary of $80 per month and he was entitled to a pension of $20 per month. The statute was amended in 1909 and the benefits of the pension system were increased to $50 per month but the plaintiff had performed no service since the amendment of the statute increasing the amount of the pension. Plaintiff sought to recover the increased amount of $50 per month which the court denied. The court discussed the difference between retirement pay earned as compensation for services rendered under the statute, and therefore valid, and a payment, not a part of compensation and not based upon services rendered, which would be a gratuity and invalid, in this manner: "In considering the right of the state to grant pensions, we enter an unexplored field from a local standpoint. In the constitution of 1866, the constitution adopted by the convention in 1871, but not ratified by the people, and the constitution of 1875, the right of the state to loan its credit to individuals or to grant extra compensation to any officer of or

contractor with the state is definitely and positively forbidden. * * * The constitutional prohibitions just referred to were not formulated and adopted with a view to the eradication of evil practices then prevalent in the commonwealth. The state has generally, to say the least, been frugal in fixing official salaries, and it may have been anticipated that attempts might be made by appropriations or ex post facto laws to favor individuals or to create charges upon the public treasury for services that others would have been willing to render for the compensation provided by law. * * * In applying these limitations to the instant case, it may be conceded that the pension forms an inducement to the individual to enter and remain in the service of the fire department, and that the pension in a sense is part of the compensation paid for those services. 2 Goodnow, Comparative Administrative Law, p. 74; Gray, Limitations of Taxing Power and Public Indebtedness, sec. 336. In this aspect of the case, if no part of the service was rendered subsequent to the enactmnt (enactment) of the law, the compensation would be a gratuity forbidden by the fundamental law of the state. Mead v. Inhabitants of Acton, 139 Mass. 341. But the relator continued in the service nine years after the law was enacted, and thereby earned a right to his pension under that act so long as it shall remain in force. The amendment of 1909 does not repeal the act of 1895 so as to deprive the relator of his right to a pension; but, since he rendered the state no services subsequent to the enactment of that amendment to increase his pension would violate section 16, art. III of the constitution."

It could hardly be made clearer or more positive that retirement benefits are either earned compensation for services rendered after the grant of them and that they are therefore valid or that they are a gratuity and not a part of compensation and therefore invalid.

In Ledwith v. Bankers Life Ins. Co., 156 Neb. 107, 54 N. W. 2d 409, this court said: "The benefits of a retire-

ment plan are contingent deferred compensation, presently earned, but payable in the future to employees upon condition that they possess the qualifications required by the plan and that they comply with the conditions and regulations imposed on receipt by them of the retirement benefits." In the opinion the court remarked: "A pension is a gratuity where it is granted for services previously rendered and which, at the time they were rendered, were fully paid for and gave rise to no legal obligation for further compensation. * * * The retirement plan involved herein does not provide for a gratuity. * * * It does not provide for benefit payments to any persons other than those employed by the company at the time or subsequent to the time it became effective. There is no management discretion in the allotment or measurement of benefits. * * * The benefits are a form of contingent deferred compensation and the plan is uniform in its application to all covered employees."

The opinion in Allen v. City of Omaha, 136 Neb. 620, 286 N. W. 916, asserts: "* * * it is true that a policeman's pension is classified as a part of his compensation and not a gratuity * * *."

In State ex rel. Sena v. Trujillo, 46 N. M. 361, 129 P. 2d 329, 142 A. L. R. 932, it is said: " 'Pensions' for state employees are pay withheld * * * and to be valid the pension must be conferred upon persons who at the time of receiving the right to them are officers or employees of the state and they cannot be conferred upon persons who had previously to the grant retired from the state's service; a pension to such persons being an 'appropriation of public funds' for individuals and a 'gift' or 'gratuity.' "

See, also, Richards v. Wheeler, 10 Cal. App. 2d 108, 51 P. 2d 436; Kern v. City of Long Beach, 29 Cal. 2d 848, 179 P. 2d 799; Rodney v. Firemens Relief Commission (Pa.), 55 Lack. Jur. 105; Salz v. State House Commission, 18 N. J. 106, 112 A. 2d 716; Opinion by the Justices,

249 Ala. 88, 30 So. 2d 14; Mahon v. Board of Education, 171 N. Y. 263, 63 N. E. 1107, 89 Am. S. R. 810; Koehnlein v. Allegheny Co. Emp. Ret. Sys., 373 Pa. 535, 97 A. 2d 88; State ex rel. Smith v. Annuity & Pension Board, 241 Wis. 625, 6 N. W. 2d 676. The Judges Retirement Act increases the compensation of the judges to the extent of the benefits granted.

The benefits of the Judges Retirement Act become vested when the member has reached the required age and completed the required service. It is then an established and vested right which may not be impaired. The interveners and two other district judges have reached the compulsory retirement age stated in the act. They have rendered services under the act and, measured by their total length of service, now have a vested right to retirement pay in addition to their salaries for the remainder of their respective lives if the act is valid and has become operative. The retirement benefits constitute increased compensation not only granted during the present term of the judges but earned during the term for the services they have been and are rendering. They amount to a definite and substantial increase in compensation during the term of office of the beneficiaries.

In Kern v. City of Long Beach, *supra,* it is said: "Pension rights acquired by public employees under statutes providing for pension payments to employees who are eligible for retirement after a period or term of service, become vested as to each employee, at least on the happening of the contingency on which the pension becomes payable. * * * Since a pension right of a public employee is an integral part of the contemplated compensation, it cannot be destroyed, once it has been vested * * *."

In State ex rel. Hanrahan v. Zupnik, 161 Ohio St. 43, 117 N. E. 2d 689, the rule is stated: "In the absence of statutory provisions to the contrary, when any particular installment of a pension, authorized under a

legally established pension system, becomes due, the right of the pensioner thereto immediately becomes vested as a matter of law and such vesting need not be directed or authorized by statute." See, also, State ex rel. Haberlan v. Love, *supra;* Payne v. Board of Trustees, 76 N. D. 278, 35 N. W. 2d 553; McFeely v. Board of Pension Commissioners, 137 N. J. Law 234, 59 A. 2d 412.

Plaintiffs resist the hypothesis that the Judges Retirement Act provides an increased compensation of the judges primarily by saying that this contention has been answered in the decisions of the courts of other states. They cite People v. Wright, 379 Ill. 328, 40 N. E. 2d 719, and quote this statement from it: "Respondent makes the point that provision for a retirement annuity from an economic standpoint amounts to an increase of compensation. This point is not valid, because the constitution only prohibits an increase during the term of office, and the beneficiary does not receive anything during such term." The retirement law considered in that case was a voluntary one by the terms of which a judge could accept or reject the pension provisions. If he accepted he consented to a deduction of a contribution from his salary and his relationship to the plan became contractual. The Nebraska retirement act is not elective; it is mandatory. It may be distinguished from the one considered in the Illinois case by the view of that court that retirement pay is an annuity purchased by voluntary contributions resulting from contractual rights between the employee and employer. Thereby the court substantially removed the Illinois plan from the field of compensation. This view and distinction are emphasized by other decisions of the court of that state.

In Krebs v. Board of Trustees, 410 Ill. 435, 102 N. E. 2d 321, 27 A. L. R. 2d 1434, the court considered an amendment of a statute which provided retirement benefits for teachers. The amendment increased the benefits from $400 to $700 annually and permitted teachers who had retired before the amendment to re-enter the

system on payment of $300 plus interest from a named date. It was argued that this was the granting of compensation after the services were rendered in violation of Article IV, section 19, of the Constitution of Illinois. The court said that the increased amount was not extra compensation but was an annuity purchased for a consideration. The court referred to its prior decisions and said: "* * * this court held that the decisions in the cases cited by appellant did not apply where the fund from which the increased payments were authorized was raised in part by voluntary contributions by the employees, but that in such cases, the voluntary contributions by the employees raised a contractual relation between the employee and the State, and therefore the parties could contract for an increase in the annuity in consideration of further contributions." See, also, Raines v. Board of Trustees, 365 Ill. 610, 7 N. E. 2d 489; Ridgley v. Board of Trustees, 371 Ill. 409, 21 N. E. 2d 286.

The conclusion of the Illinois court in People v. Wright, *supra,* that an increase during the term if the payment thereof is delayed until after the term is not prohibited may not be accepted as sound. The effect thereof would be to destroy the constitutional prohibition that there shall not be an increase in the salary of a public official during the term of office or the grant of a gratuity after the services of the officer have been rendered and terminated.

It was also concluded in that case that the voluntary contribution of a part of the salary for the annuity fund was not a reduction of salary. The Illinois court therein said: "* * * the law does not require them to contribute, but gives them an option or election, and if they do contribute, a contract relation is established, which, after their retirement, entitles them to an annuity. There is no compulsion, but on the contrary it depends upon the voluntary contributions of those affected by the legislation. * * * the effect is the same

as if the full salary were paid to him, and after it became his private means he in turn contributes to the retirement fund."

The Illinois decision is not convincing. It is inconsistent with the prior conclusions of this court. State ex rel. Haberlan v. Love, *supra;* Lickert v. City of Omaha, *supra.*

Plaintiffs cite Aldredge v. Rosser, 210 Ga. 28, 77 S. E. 2d 515, as another case that answers the argument that the Judges Retirement Act of this state provides an increase in the compensation of its members during their term. They quote therefrom the following which may have been adopted from Illinois since it has not been found in any other decision: "The retirement act does not amount to an increase in the compensation of the judge during the term of office in which he was elected for the very good reason that he receives nothing under the provisions of the act until he retires, and when he retires, his term of office, so far as he is concerned, will then be at an end." If the retirement benefits were not an increase in compensation during the term because paid afterwards, the Georgia court makes no attempt to explain why they were not compensation paid after the services were rendered, in violation of the provision of the Constitution of Georgia in that respect. The discussion concerning this rule as announced in People v. Wright, *supra,* is applicable to the Georgia case and will not be repeated.

Plaintiffs argue that if the Judges Retirement Act conflicts with the constitutional limitation that the salary of a public officer shall not be increased or decreased during his term of office the part of the act that was intended to operate before the new term commenced may be disregarded and that the remainder of the act may, in its operation after the new term commences, be considered valid. The fact that a part of a law is invalid does not always require that the entire law be treated as void. If the part that is bad is independent

of and separable from the balance of the law, or if the invalid part was not an inducement to the passage of the act, or if the remainder of the act is not so connected with the invalid portion that it cannot be upheld without doing violence to the legislative intent as a whole or result in putting in effect a law which the Legislature would not have passed had its attention been called to the invalid parts, the portion of the act that is valid may be sustained and given effect. State ex rel. Taylor v. Hall, 129 Neb. 669, 262 N. W. 835; State ex rel. Johnson v. Consumers Public Power Dist., 143 Neb. 753, 10 N. W. 2d 784, 152 A. L. R. 480; Midwest Popcorn Co. v. Johnson, 152 Neb. 867, 43 N. W. 2d 174; Peterson v. Hancock, 155 Neb. 801, 54 N. W. 2d 85.

The provisions of the act intended to operate from September 18, 1955, the date when plaintiffs say it became effective, until January 3, 1957, the beginning of the next term, cannot be deleted from the act and the remainder thereof held to be separable, complete, independent, and unrelated to the part eliminated. The treatment of this act as plaintiffs suggest would be to rewrite it in violation of the obvious intention of the Legislature and to enforce a statute which the Legislature would not have passed.

The act specifically fixes the measure of retirement pay that each judge shall receive under it on reaching the age and rendering the service for the period required and it provides for the accumulation of a fund from which the retirement payments may be made. Plaintiffs say the portions of the act providing for the contributions to the fund from September 18, 1955, to January 3, 1957, may be eliminated from the act, that they are not related to the remainder of it, and that this deletion would not materially affect the entire plan created by it. Likewise they contend the provisions of the act providing retirement pay for incumbent judges who become 70 years of age during the term which they are serving may also be eliminated as un-

essential to the plan the Legislature intended. The provisions for the accumulation of the fund are reciprocal to the payment of the retirement benefits and they are integral parts of the entire system. The two provisions are interrelated. The plan for the accumulation of the fund is not intended to be cut down while the retirement benefits remain untouched and the difference be made up by further increased appropriations of revenue of the state to supply the loss or decrease in the amount of the fund. That was not the intention of the Legislature.

The act has an additional provision for benefits for incumbent judges who are 70 years of age during their present term of office which the plaintiffs would have the court disregard. Such a member with a total service of at least 8 years when his present term expires or at the time of retirement before his term ends may receive retirement annuities as provided by sections 8, 9, and 10 of the act.

The record exhibits the amount of retirement pay each of the judges holding office on September 18, 1955, and who became 70 years of age during his present term of office was entitled to by the provisions of the act. If it became effective on that date and its operation may be suspended until January 3, 1957, plaintiffs contend that these provisions may be eliminated. They believe it is permissible, to save a part of the act, that these judges should be deprived of the opportunity to seek a re-election and that they should also be denied retirement pay. This does not respond to the intention of the Legislature as disclosed by the terms of the act.

The Judges Retirement Act was approved May 29, 1955. Laws 1955, c. 83, p. 243; §§ 24-701 to 24-714, R. S. Supp., 1955. The Constitution provides that no act shall take effect until 3 calendar months after the adjournment of the session in which it was passed except in cases of an emergency the Legislature may by a vote

of two-thirds of all of its members otherwise direct. Art. III, § 27, Constitution of Nebraska. The Judges Retirement Act is silent concerning an emergency and as to the time when it should be in effect. The sixty-seventh session of the Legislature at which the act was passed adjourned on Friday, June 17, 1955. The act would ordinarily have become law September 18, 1955. State ex rel. City Water Co v. City of Kearney, 49 Neb. 325, 68 N. W. 533; Bainter v. Appel, 124 Neb. 40, 245 N. W. 16. The prohibition of the Constitution that no act shall take effect until 3 calendar months after the adjournment of the session at which it was passed unless the emergency provisions thereof are complied with is mandatory. This, however, does not deprive the Legislature of the authority to provide that the operation of an act shall be postponed to a time much beyond 3 calendar months after the adjournment of the session at which the act was passed. The fact that ordinarily legislation cannot become law until 3 months after the end of the session at which it was enacted does not mean that it must in all cases be operative immediately upon the expiration of the 3-month period after adjournment of the session.

It has been recognized in this jurisdiction that an act without an emergency provision may become law 3 calendar months after the end of the session at which it was adopted and that the operation of its provisions may be postponed to a much later time designated by a specific date or by the happening of an event that is certain to occur. A recent instance of this is the act of 1955 increasing the salary of supreme and district judges of the state. Laws 1955, c. 77, § 3, p. 232; § 24-301.04, R. S. Supp., 1955. It postponed operation of the act until such time as the salaries "may become operative under the Constitution of Nebraska."

A much earlier instance in point is the legislation that was involved and considered in Hopkins v. Scott, 38 Neb. 661, 57 N. W. 391, in which it was concluded:

"Chapter 50, Session Laws, 1891, relating to the keeping of state and county funds, is not in conflict with the constitution * * * because of its providing that it shall not apply until the expiration of the terms of office of the state treasurer and of the several county treasurers in office at the time of its passage." In the opinion it is stated: "It is also claimed that the act of 1891 is unconstitutional, because it provides that it shall not take effect until the expiration of the terms of the county treasurers current at the passage of the act. It is said that this is in conflict with the constitutional provision that all acts shall take effect upon the expiration of three calender (calendar) months after the adjournment of the legislature. We think the limitation was one which could be properly made by the legislature. The act, as an act, did go into effect under the constitutional provision referred to. It became the law of the state from that time * * *. After the constitutional period for the act to take effect had expired, it became the law, and has, as fast as the terms of treasurers expired, become operative."

In State ex rel. Wheeler v. Stuht, 52 Neb. 209, 71 N. W. 941, this court said: "A law is not open to the criticism that separate provisions of it take effect at different dates if as an entirety it becomes of effect and operative on a fixed date * * *."

The declaration of the court in Lincoln Telephone & Telegraph Co. v. Albers, 126 Neb. 329, 253 N. W. 429, is: "We are of the opinion that the legislature had power to enact chapter 136, Laws 1933, and that it would become a law, although not operative until there was further legislation. There was then no statute authorizing payment of personal taxes in instalments, but it would become operative and effective when another act was passed providing for the payment of personal taxes in instalments."

The statute considered in Hopkins v. Scott, *supra,* provided that it should not operate until the expiration

of the present term of the State Treasurer and the present terms of the county treasurers. This is referred to in State ex rel. Taylor v. Hall, *supra,* in this manner: "This was an express provision in the statute which this court rightfully held did not render the statute void."

The remarks of the court in Diamond Glue Co. v. United States Glue Co., 187 U. S. 611, 23 S. Ct. 206, 47 L. Ed. 328, are pertinent to the present inquiry: "Statements made with a different intent in some decisions, to the effect that suspended statutes are to be read as if passed on the day when they go into operation, do not apply to a case like this. Such statutes are to be read in that way for the purposes of the operation which is suspended, but not for all."

It is indispensable to a decision of this case to determine when the Legislature intended that the Judges Retirement Act should be operative. If it intended that it should be before the beginning of the next term of district judges, January 3, 1957, the act is, because of the considerations stated above, invalid. If a different interpretation is permissible which honors the intention of the Legislature and sustains the act as a valid one it should and legally must be adopted.

In Abie State Bank v. Weaver, 119 Neb. 153, 227 N. W. 922, the court said: "It is elementary that it is not within the province of the courts to annul a legislative act unless its provisions so clearly contravene a provision of the fundamental law, or it is so clearly against public policy, that no other resort remains." See, also, Weaver v. Koehn, 120 Neb. 114, 231 N. W. 703; Sommerville v. Johnson, 149 Neb. 167, 30 N. W. 2d 577.

In interpreting an act of the Legislature all reasonable doubt must be resolved in favor of its constitutionality. If it is subject to more than one interpretation one of which sustains it as valid and another which renders it in conflict with the Constitution the

court must adopt the former. Hinman v. Temple, 133 Neb. 268, 274 N. W. 605, 111 A. L. R. 1217; Nelsen v. Tilley, 137 Neb. 327, 289 N. W. 388, 126 A. L. R. 729; Beisner v. Cochran, 138 Neb. 445, 293 N. W. 289; Peterson v. Hancock, *supra.*

One of the more significant rules in the interpretation of a statute is to ascertain the legislative intent and give effect to it if it is a lawful one. Hubbell Bank v. Bryan, 124 Neb. 51, 245 N. W. 20; McQuiston v. Griffith, 128 Neb. 260, 258 N. W. 553; Enyeart v. City of Lincoln, 136 Neb. 146, 285 N. W. 314; Howell v. Fletcher, 157 Neb. 196, 59 N. W. 2d 359. In the last case cited it is said that the legislative intent may be gathered from the reason for the enactment of the legislation in question.

The Legislature when it adopted the Judges Retirement Act is presumed to have known the provisions and limitations of the Constitution and the interpretation that the court had placed on them and on similar legislation previously enacted. It may also be assumed that in passing the act the Legislature intended a valid enactment rather than one in conflict with the Constitution. Nebraska District of Evangelical Lutheran Synod v. McKelvie, 104 Neb. 93, 175 N. W. 531, 7 A. L. R. 1688; Burgess-Nash Bldg. Co. v. City of Omaha, 116 Neb. 862, 219 N. W. 394; State ex rel. Johnson v. Goodgame, 91 Fla. 871, 108 So. 836, 47 A. L. R. 118; 11 Am. Jur., Constitutional Law, § 97, p. 725.

If on the basis that it is presumed that the Legislature intended to enact a valid Judges Retirement Act, it is determined that the Legislature intended that the act should be operative as soon as the limitations of the Constitution permit and if that date is accepted as the time when the act will commence to operate, there is no necessity for the elimination of any provision of the act and it will go into operation as to the judges of the district court at the commencement of the next term on January 3, 1957. There is sound

reason for this conclusion. This interpretation has the same effect as if the Legislature had in the act expressly declared that it should not go into operation until the beginning of the new term or as soon as it could constitutionally do so. This interpretation gives application to all the terms and expressions of the act such as "incumbent judge" and "present term." The incumbent judges who will answer to that description at that time will be the district judges elected in 1956 and who will commence their "present" terms on January 3, 1957. The provisions of the act recognize that when it becomes operative there will be district judges who are 70 years of age or more who will be qualified to serve then and for the balance of their terms. It obviously follows that a district judge who is more than 70 years of age would then, by provision of the statute, be qualified to become a candidate for nomination and re-election and if elected to serve as a district judge during the term commencing January 3, 1957.

The basis on which plaintiffs seek an injunction to prevent the names of the district judges being placed on the ballot for re-election is that the act became law and its provisions began to operate September 18, 1955, and that the district judges serving on that date were permitted only to serve out the balance of those terms and were not qualified to serve after those terms expired and when the new term commenced.

It is concluded that the Judges Retirement Act was intended to and will be operative on January 3, 1957, and in this view it does not violate the Constitution of the state for any of the reasons discussed herein.

The demurrer of plaintiffs to the answer of the defendant and to the petition of intervention should be and it is overruled.

DEMURRER OF PLAINTIFFS OVERRULED.