REQUESTED BY: Senator David I. Maurstad Nebraska State Legislature
In our Op. Att'y Gen. No. 97002 (January 8, 1997), we discussed a number of questions pertaining to state employee buy-outs posed to us by Lawrence Primeau, the Director of the Nebraska Department of Administrative Services ("DAS"). In his opinion request, Mr. Primeau raised several issues involving the propriety and constitutionality of possible legislation which would permit state employee buy-outs. Based upon our policy of responding to opinion requests from state officials only with respect to questions arising "in the discharge of their duties," we declined to answer Mr. Primeau's questions concerning the constitutionality of possible legislation dealing with state employee buy-outs, and we stated that we preferred to address such constitutional questions in the context of an opinion request from a legislator in reference to specific proposed legislation. You have now posed such constitutional questions in reference to LB 878, a legislative bill pertaining to state employee buy-outs.
LB 878 would require the Personnel Division of DAS to "develop, administer, and coordinate all requests from agencies for an employee buy-out program." The Personnel Division would further "determine under what conditions a buy-out is offered, including the appropriateness of a buy-out and the number of buy-outs to be offered." Section 1 of the bill also includes the following specific findings by the Legislature:
 The Legislature finds that the state must use its human resources in the most cost-effective manner possible by employing skilled workers at reasonable rates and in positions in which their skills will be best utilized. The Legislature also finds that it is necessary to create a program that will give state employees the opportunity to leave state government with compensation for surrendering vested rights under the State Personnel System or the state's collective-bargaining agreement.
LB 878 goes on to define the "employees" which would be subject to the bill as those state employees covered under the State Personnel System or a collective bargaining agreement, and the bill would apply only to the state agencies, departments, or boards whose employees fit into those categories. LB 878 also creates the following procedure for establishment of a buy-out program:
 If an agency determines there is a need for a buy-out program, the director of the affected agency shall submit a proposed plan detailing the scope of the buy-out, addressing such factors as geographic sites, classifications impacted, future agency needs, and potential costs. The Director of Administrative Services shall be responsible for approving any buy-out plan prior to the offering of the plan to eligible employees.
LB 878 does not define the term "buy-out;"[1] nor does the bill describe the particulars of any employee rights which might be the subject of a buy-out program or how those rights might be valued.
You first ask, "[d]oes LB 878 allow impermissible compensation to state employees that is contrary to the constitutional provision prohibiting the payment of extra compensation after services are rendered? (Article III, Section 19)"
Art. III, § 19 of the Nebraska Constitution provides, in pertinent part,
 The Legislature shall never grant any extra compensation to any public officer, agent, or servant after the services have been rendered nor to any contractor after the contract has been entered into, . . . nor shall the compensation of any public officer, including any officer whose compensation is fixed by the Legislature, be increased or diminished during his term of office. . .
Since LB 878 specifically applies to state employees rather than officers of state government, we will concern ourselves only with the initial portion of art. III, § 19.
The purpose of state constitutional provisions prohibiting extra compensation to public employees after services are rendered is to prevent payments in the nature of gratuities for past services. 67 C.J.S. Officers § 236. As stated by the Nebraska Supreme Court in Wilson v. Marsh, 162 Neb. 237,75 N.W.2d 723 (1956), a case which, in part, involved the application of art. III, § 19 to judicial pensions:
 It could hardly be made clearer or more positive that retirement benefits are either earned compensation for services rendered after the grant of them and that they are therefore valid or that they are a gratuity and not a part of compensation and therefore invalid.
Id. at 253, 75 N.W.2d at 733. As a result, if the language of LB 878 allows buy-out programs which might constitute gratuities for past services, then the provisions of the bill are of suspect constitutionality. On the other hand, if the only buy-out programs permitted by LB 878 involve payment to state employees for the actual value of existent rights earned when services were rendered rather than gratuities, then the bill is acceptable under art. III, § 19.
While Section 1 of LB 878 detailing legislative findings refers to compensation for the surrender of "vested" employee rights under the Personnel System or collective bargaining agreements, that is the only reference in the bill to the nature of the employee rights which would be subject to the buy-out process. Beyond that reference, the term "buy-out" is not defined in LB 878, and the bill does not specify either the nature of the rights subject to the buy-out process or the manner in which those rights must be valued. Instead, the bill essentially leaves the determination of the conditions of a buy-out and its "appropriateness" to the DAS Personnel Division and the Director of DAS. As a result, there is no way to determine on the face of LB 878 whether the buy-outs contemplated under the bill would involve improper gratuities for past services or permissible payment for the actual value of existent rights earned when services were rendered. It seems to us, therefore, that LB 878 does allow impermissible compensation to state employees in contravention of art. III, § 19 simply because it fails to specify the exact nature of the rights which would be subject to a buy-out program and how those rights must be valued.
You also ask, "[w]hat rights and benefits do state employees possess that would enable the state to offer a monetary buy-out?"
As discussed above, art. III, § 19 of the Nebraska Constitution prohibits gratuities for past services. Therefore, it would appear that the acceptability of any buy-out program under art. III, § 19 involves two considerations. The buy-out cannot constitute a gratuity. Nor can the payment included with the buy-out be for past services.
In the context of government employee pension benefits, the Nebraska Supreme Court has indicated that an award of pension benefits to particular government employees involves an impermissible gratuity for past services when the services of those employees were rendered and terminated before the date of the legislative act awarding the benefits. Retired City CivilianEmployees Club of the City of Omaha v. The City of OmahaEmployees' Retirement System, 199 Neb. 507, 260 N.W.2d 472
(1977). On the other hand, all that is necessary to avoid this problem with benefits for past services is that the employees receiving the pension benefits in question be employees of the governmental entity on the effective date of the Act creating the benefits. Gossman v. State Employees Retirement System of theState of Nebraska, 177 Neb. 326, 129 N.W.2d 97 (1964). In the present instance, the employees subject to buy-outs under LB 878 are defined as "those employees covered under the State Personnel System or a collective bargaining agreement." Under that definition, the persons receiving the benefit of the buy-outs would necessarily be current employees of the State of Nebraska. As a result, we do not believe that the bill involves a payment for past services.
Permissible buy-out payments also cannot constitute gratuities. A gratuity, in turn, is something acquired without bargain or inducement, or a gift. BLACK'S LAW DICTIONARY 631 (5th ed. 1979). With this definition in mind, it seems to us that payments to state employees in a buy-out program must involve an actual or existent right which the individual employee possesses, and that the amount of the payment for the buy-out must reflect the actual value of the right, as best it can be ascertained. Anything beyond that would constitute both a gift and an impermissible gratuity.
State employees who are covered by the State Personnel System or collective bargaining agreements have a number of statutory rights which are clearly existent rights subject to valuation. For example, under Neb. Rev. Stat. § 81-1328 (1994), state employees earn vacation time and can be paid for that time if they are dismissed or voluntarily leave state employment. Similarly, under Neb. Rev. Stat. §§ 81-1320 and 81-1325
(1994), state employees earn sick leave and can be paid for accumulated portions of that leave upon retirement under certain circumstances. We believe that payment for the readily ascertainable value of such rights in a buy-out program would not involve an impermissible gratuity.
In our Opinion No. 97002, we also discussed other rights available to state employees in response to specific questions from the Director of DAS. We were asked whether there is a legal right to continued employment in Nebraska, whether such a right can be valued and whether employee "bumping rights" can be valued.[2] In Opinion No. 97002, we concluded that certain state employees subject to the Personnel Rules or labor contracts have the rights established by those enactments or agreements and are not employees "at will." We also indicated that the rights of those employees and state employee bumping rights could theoretically be valued, although we were uncertain about what valuation theory would be used, and we were concerned about the speculative nature of that valuation process. Nonetheless, since certain state employees are not entirely employees "at will," and since those rights and state employee bumping rights can, in theory, be valued, we believe that such rights could form the basis for a state employee buy-out program. However, we would caution that the valuation process for such a buy-out program must be sufficiently precise so as to avoid any payment beyond the actual value of the rights at issue. Otherwise, the buy-out program would involve an impermissible gratuity. Moreover, we believe that the valuation process involved in such an employee buy-out program should be stated in the enabling statute in order to avoid the difficulty with LB 878 where the lack of precise definitions and definite valuation procedures could allow impermissible gratuitous buy-outs.
Sincerely yours,
 DON STENBERG Attorney General
 Dale A. Comer Assistant Attorney General
cc: Patrick J. O'Donnell Clerk of the Legislature
Approved by:
Don Stenberg
Attorney General
[1] While LB 878 does not define the term "buy-out," we assume, for purposes of this opinion, that "buy-out" refers to the situation where a state employee would leave his or her position with state government and waive any rights in connection with that employment in exchange for some form of monetary payment by the State.
[2] As we noted in Opinion No. 97002, to "bump" is to fill a position with an employee of greater seniority at the expense of one with less seniority, so that the senior employee can avoid layoff. Smith v. Sorensen, 748 F.2d 427 (8th Cir. 1984).